ORIGINAL

FILED
NOV - 7 2005
U.S. COURT OF FEDERAL CLAIMS

Laurence F. Padway, Calif. Bar # 83914
Law Offices of Laurence F. Padway
1516 Oak Street, Suite 109
Alameda, California 94501
Telephone: (510)814-6100
Facsimile : (510)814-0650

Attorneys for Plaintiffs
RITA MOHLEN and RICHARD SKRINDE

05-1179L

UNITED STATES COURT OF CLAIMS

RITA MOHLEN and ,
RICHARD SKRINDE

Plaintiffs,

vs.

UNITED STATES OF AMERICA,

Defendants.

________________________________/

Case No.

COMPLAINT FOR TAKING OF PROPERTY WITHOUT COMPENSATION

Comes now the plaintiffs, alleging of defendants as follows:

1. Jurisdiction in this Court lies under the Tucker Act, 28 U. S. C. 1491. The claims herein are based upon the taking of property without just compensation in violation of the Fifth Amendment to the Constitution of the United States of America.

2. Plaintiffs were the owners of the real property located at 3017 Marina Drive, Alameda, California, which is adjacent to the Oakland Inner Harbor Tidal Canal. Plaintiffs sold their interest in that real property in September, 2005.

3. Defendant United States of America, through the United States Army Corps. Of Engineers, owns the Oakland Inner Harbor Tidal Canal, commonly known as the Oakland estuary, in

Alameda County, California.

4. Plaintiff Rita Mohlen obtained a license from defendant, Department of the Army license no. DACW05-3-00-603 to maintain and repair a pier, boathouse, boat hoist and floating dock in the Oakland Inner Harbor Tidal Canal. A copy of the license is attached as exhibit 1. The license was amended on September 16, 2003, and a copy of that amendment is attached as exhibit 2. The area licensed is adjacent to 3017 Marina Drive, Alameda, California. Plaintiffs' interest in the license and the structures covered by the license are interests protected by the takings clause of the Fifth Amendment to the Constitution of the United States. Richard Skrinde is the spouse of Rita Mohlen, a co-owner of the real property and holds a community property interest in the license held by Rita Mohlen.

5. On August 19, 2004, without cause, and without compensation, defendant revoked the described license. A copy of the letter revoking the license is attached as exhibit 3.

6. The revocation of the license was motivated by a decision to support illegal efforts by the City of Alameda to retaliate against plaintiffs for the exercise of their constitutionally protected rights to petition the City for a hearing in connection with other issues involving this real property.

7. Separate and apart from the illegal motive for the revocation of the license, defendant has selectively engaged in a moratorium on permit and license applications with respect to the Oakland Inner Harbor Tidal Canal. Although proclaiming publicly that a moratorium exists on permits and licenses for construction in or abutting the Oakland Inner Harbor Tidal Canal, defendant waives the moratorium for selected preferred citizens, and only enforces it against other, non-preferred citizens including plaintiffs. The claimed moratorium has been in effect for five years, ostensibly to provide defendant with time to create a plan for the area, but in fact, virtually no such planning activity has taken place, and the selective moratorium has the effect of simply depriving

affected homeowners of the full use and enjoyment of their property and denying them equal protection under law.

8. As a result of the revocation of the license, defendant impaired the value of the real property located at 3017 Marina Drive, and of the adjacent dock, boat house, boat hoist and related structures. Plaintiffs sold their interest in that real property in September, 2005, sustaining a loss of approximately $300,000., representing the difference in value of the property with and without the license.

9. As a proximate result of the foregoing, plaintiffs have been damaged by the loss of value of the real property in the amount of $300,000., plus costs for architects and other professionals who attempted to prevent revocation of the license.

10. Plaintiffs further incurred costs of suit and attorneys' fees herein, all in an amount to be proven at trial and estimated in the sum of $150,000. Plaintiffs are entitled to their attorneys' fees under the Equal Access to Justice Act, 28 U. S. C. 2412.

Wherefore, plaintiffs pray for relief as set forth below:

1. For the value of the property taken in the sum of $300,000;

2. For consequential damages, including experts costs, attorneys fees and court costs according to proof or in the sum of $150,000; and

3. For such other and further relief as the Court deems just and proper.

Dated: October 30, 2005

Laurence F. Padway
Attorney for plaintiffs

License No. DACW05-3-00-603

**DEPARTMENT OF THE ARMY LICENSE**
**OAKLAND INNER HARBOR TIDAL CANAL**
**ALAMEDA COUNTY, CALIFORNIA**

**THE SECRETARY OF THE ARMY**, hereinafter referred to as the Secretary, under authority of the general administrative powers of the Secretary, herby grants to Rita I.A. Mohlen hereinafter referred to as the grantee, a license to maintain and repair an existing pier, boat house, boat hoist and floating dock within the contiguous Oakland Inner Harbor Tidal Canal to your property at 3017 Marina Drive, Alameda, CA 94501, over, across, in and upon lands of the United States, as identified in Exhibit A, attached hereto and made a part hereof, hereinafter referred to as the premises.

R.C.M.

**THIS LICENSE** is granted subject to the following conditions:

**1. TERM**

This license is granted for a period of five (5) years, beginning upon execution of this license by both parties, but revocable at will by the Secretary.

**2. CONSIDERATION**

a. The grantee shall pay in advance to the United States the amount of TWO HUNDRED FIFTY AND NO/100 DOLLARS ($250.00), in full for the term hereof payable to the order of the Finance and Accounting Officer ("FAO-USAED, Sacramento" is acceptable), U.S. Army Engineer District, Sacramento, 1325 J Street, Sacramento, CA 95814-2922.

b. All consideration and other payments due under the terms of this license must be paid on or before the date they are due in order to avoid the mandatory sanctions imposed by the Debt Collection Act of 1982 (31 U.S.C. Section 3717). This statute requires the imposition of an interest charge for the late payment of debts owed to the United States, an administrative charge to cover the costs of processing and handling delinquent debts, and the assessment of an additional penalty charge on any portion of a debt that is more than 90 days past due. The provisions of the statute will be implemented as follows:

(1) The United States will impose an interest charge, the amount to be determined by law or regulation, on late payment of debts. Interest will accrue from the due date.

An administrative charge to cover the cost of processing and handling each payment will also be imposed.

(2) In addition to the charges set forth above, the United States will impose a penalty charge of six percent (6%) per annum on any payment or portion thereof, more than ninety (90) days past due. The penalty shall accrue from the date of delinquency and will continue to accrue until the debt is paid in full.

(3) All payments received will be applied first to any accumulated interest, administrative, and penalty charges and then to any unpaid rental or other payment balance. Interest will not accrue on any administrative or late payment penalty charge.

**3. NOTICES**

All notices and correspondence to be given pursuant to this license shall be addressed, if to the grantee, to Ms. Rita Mohlen, 3017 Marina Drive, Alameda, CA 94501; and if to the United States, to the District Engineer, U.S. Army Engineer District, Sacramento, Attention: Chief, Real Estate Division, 1325 J Street, Sacramento, CA 95814-2922; or as may from time to time otherwise be directed by the parties. Notice shall be deemed to have been duly given if and when enclosed in a properly sealed envelope addressed as aforesaid, and deposited, postage prepaid, in a post office regularly maintained by the United States Postal Service.

**4. AUTHORIZED REPRESENTATIVES**

Except as otherwise specifically provided, any reference herein to "Secretary", "District Engineer", or "said officer" shall include their duly authorized representatives. Any reference to "grantee" shall include any duly authorized representatives.

**5. SUPERVISION BY THE DISTRICT ENGINEER**

The use and occupation of the premises shall be subject to the general supervision and approval of the District Engineer, San Francisco District, hereinafter referred to as said officer, and to such rules and regulations as may be prescribed from time to time by said officer.

**6. APPLICABLE LAWS AND REGULATIONS**

The grantee shall comply with all applicable Federal, state, county and municipal laws, ordinances and regulations wherein the premises is located.

**7. CONDITIONAL USE BY GRANTEE**

The exercise of the privileges herein granted shall be:

a. without cost or expense to the United States;

b. subject to the right of the United States to improve, use or maintain the premises;

c. subject to other outgrants of the United States on the premises;

d. personal to the grantee, and this license, or any interest therein, may not be transferred or assigned; and

e. subject to regulatory requirements from Federal, state, and local agencies having jurisdiction within the Oakland Inner Harbor Tidal Canal.

**8. CONDITION OF PREMISES**

The grantee acknowledges that it has inspected the premises, knows its condition, and understands that the same is granted without any representations or warranties whatsoever and without any obligation on the part of the United States.

**9. COST OF UTILITIES**

The grantee shall pay the cost, as determined by the officer having immediate jurisdiction over the premises, of producing and/or supplying any utilities and other services furnished by the Government or through Government-owned facilities for the use of the grantee, including the grantee's proportionate share of the cost of operation and maintenance of the Government-owned facilities by which such utilities or services are produced or supplied. The Government shall be under no obligation to furnish utilities or services. Payment shall be made in the manner prescribed by the officer having such jurisdiction.

**10. PROTECTION OF PROPERTY**

The grantee shall keep the premises in good order and in a clean, safe condition by and at the expense of the grantee. The grantee shall be responsible for any damage that may be caused to property of the United States by the activities of the grantee under this license and shall exercise due diligence in the protection of all property located on the premises against fire or damage from any and all other causes. Any property of the United States damaged or destroyed by the grantee incident to the exercise of the privileges herein granted shall be promptly repaired or replaced by the grantee to a condition satisfactory

to said officer or, at the election of said officer, reimbursement made therefor by the grantee in an amount necessary to restore or replace the property to a condition satisfactory to said officer.

**11. INDEMNITY**

a. The grantee agrees to assume all risks of loss or damage to property and injury or death to persons by reason of or incident attributable or incident to the condition or state of repair of the premises or the activities conducted under this license. The grantee expressly waives all claims against the United States for any such loss, damage, personal injury or death caused by or occurring as a consequence of such possession and/or use of the premises by the grantee, or the conduct of activities or the performance of responsibilities under this license by the grantee. The grantee further agrees to indemnify and hold harmless the United States, Army, its officers, agents and employees, from and against all suits, claims, demands or actions, liabilities, judgments, costs and attorneys' fees arising out of, or in any manner predicated upon, personal injury, death or property damage resulting from, related to, caused by or arising out of the possession and/or use of the premises by the grantee. The United States will give the grantee notice of any claim against it covered by this indemnity as soon after learning of such claim as practicable.

b. The grantee shall indemnify and hold harmless the United States from any costs, expenses, liabilities, fines, or penalties resulting from discharges, releases, emissions, spills, storage, disposal, or any other action by the grantee giving rise to United States liability, civil or criminal, or responsibility under Federal, state or local environmental laws.

c. Sub-conditions a. and b. of this Condition and the obligations of the grantee hereunder shall survive the expiration or termination of the license and any conveyance of the premises. The grantee's obligation hereunder shall apply whenever the United States incurs costs or liabilities for the grantee's actions giving rise to liability under this condition.

d. The United States shall not be responsible for damages to property or injuries to persons which may arise from or be incident to the exercise of the privileges herein granted, or for damages to the property of the grantee, or for damages to the property or injuries to the person of the grantee's officers, agents, or employees or others who may be on the premises at their invitation or the invitation of any one of them, and the grantee shall hold the United States harmless from any and all

such claims not including damages due to the fault or negligence of the United States or its contractors.

**12. RESTORATION**

On or before the expiration of this license or its termination by the grantee, the grantee shall vacate the premises, remove the property of the grantee, and restore the premises to a condition satisfactory to said officer. If, however, this license is revoked, the grantee shall vacate the premises, remove said property and restore the premises to the aforesaid condition within such time as the District Engineer may designate. In either event, if the grantee shall fail or neglect to remove said property and restore the premises, then, at the option of said officer, the property shall either become the property of the United States without compensation therefor, or said officer may cause the property to be removed and no claim for damages against the United States or its officers or agents shall be created by or made on account of such removal and restoration work. The grantee shall also pay the United States on demand any sum that may be expended by the United States after the expiration, revocation, or termination of this license in restoring the premises.

**13. INSURANCE**

a. At the commencement of this license, the grantee shall obtain, from a reputable insurance company, or companies, liability insurance. The insurance shall provide an amount not less than that which is prudent, reasonable and consistent with sound business practices or a minimum combined single limit of ONE MILLION AND NO/100 DOLLARS ($1,000,000.00), whichever is greater, for any number of persons or claims arising from any one incident with respect to bodily injuries or death resulting therefrom, property damage, or both, suffered or alleged to have been suffered by any person or persons resulting from the operations of the grantee under the terms of this license. The grantee shall require its insurance company to furnish to the said officer a copy of the policy or policies, or if acceptable to the said officer, certificates of insurance evidencing the purchase of such insurance. The minimum amount of liability insurance coverage is subject to revision by the said officer every three years or upon renewal or modification of this license.

b. The insurance policy or policies shall be of comprehensive form of contract and shall specifically provide protection appropriate for the types of facilities, services and activities involved. The grantee shall require that the insurance company give the said officer thirty (30) days' written notice of any cancellation or change in such insurance. The said

officer may require closure of any or all of the premises during any period for which the grantee does not have the required insurance coverage.

**14. NON-DISCRIMINATION**

The grantee shall not discriminate against any person or persons or exclude them from participation in the grantee's operations, programs or activities because of race, color, religion, sex, age, handicap or national origin in the conduct of operations on the premises. The grantee shall comply with the Americans with Disabilities Act and attendant Americans with Disabilities Act Accessibility Guidelines (ADAAG) published by the Architectural and Transportation Barriers Compliance Board.

**15. TERMINATION**

This license may be terminated by the grantee at any time by giving the District Engineer at least ten (10) days notice in writing provided that no refund by the United States of any consideration previously paid shall be made.

**16. ENVIRONMENTAL PROTECTION**

a. Within the limits of their respective legal powers, the parties to this license shall protect the premises against pollution of its air, ground and water. The grantee shall comply with any laws, regulations, conditions, or instructions affecting the activity hereby authorized if and when issued by the Environmental Protection Agency, or any Federal, state, interstate or local governmental agency having jurisdiction to abate or prevent pollution. The disposal of any toxic or hazardous materials within the premises is specifically prohibited. Such regulations, conditions, or instructions in effect or prescribed by said Environmental Protection Agency, or any Federal, state, interstate or local governmental agency are hereby made a condition of this license. The grantee shall not discharge waste or effluent from the premises in such a manner that the discharge will contaminate streams or other bodies of water or otherwise become a public nuisance.

b. The grantee will use all reasonable means available to protect the environment and natural resources, and where damage nonetheless occurs from the grantee's activities, the grantee shall be liable to restore the damaged resources.

c. The grantee must obtain approval in writing from said officer before any pesticides or herbicides are applied to the premises.

**17. HISTORIC PRESERVATION**

The grantee shall not remove or disturb, or cause or permit to be removed or disturbed, any historical, archeological, architectural or other cultural artifacts, relics, remains or objects of antiquity. In the event such items are discovered on the premises, the grantee shall immediately notify said officer and protect the site and the material from further disturbance until said officer gives clearance to proceed.

**18. DISCLAIMER**

This license is effective only insofar as the rights of the United States in the premises are concerned; and the grantee shall obtain any permit or license that may be required by Federal, state, or local statute in connection with the use of the premises. It is understood that the granting of this license does not preclude the necessity of obtaining a Department of the Army permit for activities that involve the discharge of dredge or fill material or the placement of fixed structures in the waters of the United States, pursuant to the provisions of Section 10 of the Rivers and Harbors Act of 3 March 1899 (33 USC 403) and Section 404 of the Clean Waters Act (33 USC 1344).

**19. ANTI-DEFICIENCY ACT NOTICE**

The obligation of the United States to perform, pay or reimburse any money under this license is subject to the availability of appropriated funds, and nothing in this license shall be interpreted to require obligations or payments by the United States in violation of the Anti-Deficiency Act, Public Law 97-258.

---------------------NO PARTICULARS FOLLOW---------------------

License No. DACW05-3-00-603
Oakland Inner Harbor Tidal Canal
Alameda, CA

**THIS LICENSE** is not subject to Title 10, United States Code, Section 2662, as amended.

**IN WITNESS WHEREOF,** I have hereunto set my hand by authority of the Secretary of the Army, this 5 day of October 2000.

SHARON CAINE
Assistant Chief, Real Estate Division
U.S. Army Engineer District, Sacramento

THIS LICENSE is also executed by the grantee this 12 day of Sept 2000.

Rita I.A. Mohlen



1334

**Exhibit A**

**US Army Corps of Engineers**
**Oakland Inner Harbor Tidal Canal**
**License No. DACW05-3-00-603**

**Parcel dimension:** File Copy EA Ed Aguirre
48'6" X 95'
**Structures:**
Pier, Boathouse, Boathoist and Floating Dock
**Property Adjacent:**
3017 Marina Drive, Alameda CA (Lot # 185)
**Owner:** Rita Mohlen




DEPARTMENT OF THE ARMY
U.S. ARMY ENGINEER DISTRICT, SACRAMENTO
CORPS OF ENGINEERS
1325 J STREET
SACRAMENTO, CALIFORNIA 95814-2922



Skrinkle - Army Corp of Engineers

AMENDMENT No. 1
TO
DEPARTMENT OF THE ARMY
LICENSE NO. DACW05-3-00-603
OAKLAND INNER HARBOR TIDAL CANAL
ALAMEDA COUNTY, CALIFORNIA

Department of the Army License No. DACW05-3-00-603, granting permission to Rita I.A. Mohlen, to maintain and repair an existing pier, boathouse, boat hoist and floating dock within the contiguous Oakland Inner Harbor Tidal Canal, is hereby amended, effective 3 September 2003, in the following particular:

1. Said license is amended to delete Exhibit "A", which is attached to and made a part of the original license. Exhibit "B" is the replacement exhibit and is attached hereto and made a part hereof as the now licensed structure.

Said license is amended in the above particular only, and all other conditions thereof shall remain binding and in full force and effect. This amendment shall henceforth be considered a part of said license as if fully and completely written therein.

**IN WITNESS WHEREOF,** I have hereunto set my hand by authority of the Secretary of the Army, this 16 day of September 2003.

By: [signature]

for MARVIN D. FISHER
Chief, Real Estate Division
U.S. Army Engineer District, Sacramento

REVIEWED AS TO FORM AND CONTENT:
[signature]
ATTORNEY

This Amendment No. 1 is hereby accepted by the grantee this ____ day of __________ 2003.

By: [signature] 9/5/03
Rita I.A. Mohlen

EXHIBIT TWO




EXHIBIT B

P L A N (PARTIAL)

PROPOSED FLOATING DOCK REV 8/25/03
RAIL LOCATIONS

ENDED DRAWING
FILE # 268405






ITALO CALPESTRI III, AIA
ARCHITECT & ASSOCIATES
Architecture . Planning
Bank of America Building
1504 Park St., Suite 1
Alameda, CA 94501
Tel: (510) 522 6769
Fax: (510) 52[illegible]

PROJECT
[illegible]
ALAMEDA

DEPARTMENT OF THE ARMY
SAN FRANCISCO DISTRICT, CORPS OF ENGINEERS
333 MARKET STREET
SAN FRANCISCO, CALIFORNIA 94105-2197

AUG 1 9 2004

Regulatory Branch

SUBJECT: File Number 26840S

Mr. Laurence F. Padway, Esq.
1516 Oak Street, #109
Alameda, CA 94501

Dear Mr. Padway:

The U.S. Army Corps of Engineers, San Francisco District ("District") notified your clients, Rita Mohlen and Richard Skrinde, in May 2004 that the District had suspended their permit authorization to repair a residential dock behind their residence at 3017 Marina Drive in the City and County of Alameda, California. The District met with you and Mr. Skrinde on July 14, 2004, to discuss the suspension of the permit authorization.

Now, in consideration of the factors enumerated in 33 C.F.R. section 330.5(d) (2004) "Issuing, modifying, suspending, or revoking nationwide permits and authorizations," the District hereby **revokes** its previous permit authorization.

The District Engineer is required to conduct a public interest review in evaluating all permit applications pursuant to 33 C.F.R. section 320.4(a) (2004). The public interest review is based on an evaluation of the probable impacts, including cumulative impacts, of the proposed activity and its intended use on the public interest. Among the factors, the District Engineer has evaluated issues related to economics, land use, navigation and the environment. As such, the balance of interests weighs in favor of revoking the permit.

In view of the fact that we have new information on several of the factors relevant to the public interest review including, but not limited to, cumulative impacts, we are required to revisit our previous decisions regarding the verification that Mr. Skrinde's activity would qualify for a Nationwide Permit (NWP) 3. Most significantly in this regard, it is clear that Mr. Skrinde's proposed project exceeds the parameters of NWP 3, titled "Maintenance." Rather than a "[m]inor deviation[] in [a] structure's configuration," the proposed project would result in the complete reconfiguration of the current dock resulting in a significant increase in the dock's footprint.

Significant, too, is Mr. Skrinde's current non-compliance with the terms of his real-estate license (DACW05-3-00-603). Section 6 of this license requires that the "grantee . . . comply with all applicable Federal, state, county and municipal laws, ordinances and regulations wherein the premises is located." The City of Alameda recently informed the District that the property at 3017 Marina Drive currently carries numerous California building code violations.

EXHIBIT THREE

Next, circumstances have changed since the District first indicated in October 2000 that Mr. Skrinde could proceed with construction. The District's current moratorium on new construction within the Oakland Inner Harbor Tidal Canal ("Canal") weighed heavily against Mr. Skrinde's proposed activity, in that a more detailed analysis of his construction plans determined that the cumulative impacts are greater than originally contemplated. In light of the District's vigorous negotiations with the cities of Oakland and Alameda regarding the eventual transfer of Federally owned land to the respective cities, the moratorium is necessary to allow time for the District to work collaboratively with other resource agencies in crafting a Waterfront Management Plan that would also satisfy the long-term planning objectives of the cities of Oakland and Alameda.

Furthermore, Mr. Skrinde's current dock already extends much further into the Canal than virtually every other dock on the Alameda side of the Canal. The proposed plan would have added significantly to the size of this aberration. The interest of ensuring navigation safety, therefore, weighed against Mr. Skrinde's plan.

The District also recently received an objection from a neighboring property owner, who alleged that construction of Mr. Skrinde's proposed dock would impede access to his dock.

On balance, therefore, the public-interest factors identified above outweigh Mr. Skrinde's personal interest in expanding the size of his dock several dozen feet into the Canal.

Despite the revocation of our previous permit authorization, the District invites Mr. Skrinde to apply for a permit that adheres to the moratorium on new construction.

Should you have any questions regarding this matter, please call Jason Tarasek, assistant district counsel, at 415-977-8125. Please address all correspondence to the Regulatory Branch and refer to the File Number at the head of this letter.

Sincerely,

for Mike Dillabough

Philip T. Feir
Lieutenant Colonel, U.S. Army
Commanding

Copy Furnished:
Ms. Rita Mohlen, 3017 Marina Dr.; Alameda CA 94501
City of Alameda, Attn: Jerry L. Cormack, Development Review Manager
Bay Conservation and Development Commission, San Francisco, CA