Laurence F. Padway, Calif. Bar # 83914
Law Offices of Laurence F. Padway
1516 Oak Street, Suite 109
Alameda, California 94501
Telephone: (510)814-6100
Facsimile : (510)814-0650

Attorneys for Plaintiffs
RITA MOHLEN and RICHARD SKRINDE

UNITED STATES COURT OF CLAIMS

RITA MOHLEN and ,
RICHARD SKRINDE

Plaintiffs,

vs.

UNITED STATES OF AMERICA,

Defendants.

_________________________________/

Case No. 05-1179L

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

TABLE OF CONTENTS

| | PAGE |
|---|---|
| TABLE OF AUTHORITIES CITED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ii |
| 1. Introduction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 |
| 2. Richard Skrinde Has Standing Because His Property was Taken. . . . . . . . . . . . . . . . . | 2 |
| 3. Governmental Action Took the Property of Ms. Mohlen and Mr. Skrinde . . . . . . . . . . | 2 |
| 4. Real Estate Property Interests are Cognizable under the Fifth Amendment . . . . . . . . . | 4 |
| 5. Defendant's Illegal Revocation of the Permit Results in a Taking . . . . . . . . . . . . . . . . . | 4 |
| 6. Defendant's Argument that the License Expires is Irrelevant . . . . . . . . . . . . . . . . . . . . | 5 |
| 7. Jurisdiction Properly Lies in This Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| 8. Ms. Mohlen and Mr. Skrinde are Entitled to the Market Value of the Property Taken . | 7 |

# TABLE OF OF AUTHORITIES CITED

CASES PAGE

Alabama Hospital Association v. U. S.
656 Fed. 2d 606, 610 (Ct. Cl. 1981) . . . . . . 6

American Pelagic Fishing Company v. United States
379 Fed. 3d 1363 (Fed. Cir. 2004) . . . . . . 4

Arctic Fisheries v. United States
59 Fed. Cl. 360 (2004) . . . . . . 4

Banks v. U.S.
69 Fed. Cl. 206 (2006) . . . . . . 7

Conti v. United States
291 Fed. 3d 1334 (Fed. Cir. 2002) . . . . . . 4

Hansen v. U. S.
65 Fed. Cl. 76 (2005) . . . . . . 4, 6

Norman v. U. S.
63 Fed. Cl. 231 (Fed. Cl. 2004) . . . . . . 4

Noronha v. Stewart
199 Cal.App.3d 485 (1988) . . . . . . 5

Pettro v. U.S.
47 Fed.Cl. 136 (2000) . . . . . . 2

U. S. v. Fuller
409 U.S. 488. 500 . . . . . . 7

FEDERAL STATUTES

33 C. F. R. 330.1(b) . . . . . . 1

33 C. F. R. 330.1(d). . . . . . . 5

**1. Introduction.**

Rita Mohlen and Richard Skrinde owned their home adjacent to the Oakland Inner Tidal Canal, which is owned by the United States. They also owned the residential pier, boathouse, boat hoist and floating dock which is physically located on the government property.

These structures were maintained, repaired and improved under a license from the U. S. Army Corps of Engineers, a copy of which is attached to the Complaint. That license authorized Ms. Mohlen "to maintain and repair an existing pier, boathouse, boat hoist and floating dock within the contiguous Oakland Inner Harbor Tidal Canal." Complaint, exhibit 2, first paragraph. A nationwide permit[1] adopted by defendant was also required to authorize the structures.

The pier, boathouse, boat hoist and floating dock comprise real property because they are permanent, fixed and immovable structures. The license granted to Ms. Mohlen by the defendant to maintain and repair this real property approved specific design plans for it. (Complaint, exhibit 1). An amended license approved a modified design. (Complaint, exhibit 2).

Both the license and the nationwide permit are required to maintain the structures on government property. The structures themselves, however, are owned by Ms. Mohlen and Mr. Skrinde.

The complaint alleges that defendant "revoked the license." Complaint, par. 5. By inconsequential drafting error, the complaint refers to revocation of the license when it should have

---

[1] Nationwide permits are a type of general permit issued by the U. S. Army Corps of Engineers which are "designed to regulate, with little, if any, delay or paperwork, certain activities having minimal impacts." 33 C. F. R. 330.1(b). Defendant has a nationwide permit providing for regulation of residential dock repairs and improvements.

referred to the revocation of the nationwide permit for this property only. See Complaint, exhibit 3, letter revoking permit. The substantive point, however, is that defendant revoked the right of Ms. Mohlen to maintain, repair and improve the structures which she owned with Mr. Skrinde.

We demonstrate below that taking the right to maintain these real property interests is a cognizable claim under the 5th amendment.

**2. Richard Skrinde Has Standing Because His Property was Taken.**

The structures in issue are jointly owned by Rita Mohlen and Richard Skrinde. Complaint, paragraphs 2 and 4. Substantively, both Ms. Mohlen and Mr. Skrinde's ability to maintain and repair their real property was taken away, even though the license to maintain, repair and improve the property was held only by Ms. Mohlen. Therefore, even though the repair license was limited to Ms. Mohlen, the "taking" applies equally to both plaintiffs.

**3. Governmental Action Took the Property of Ms. Mohlen and Mr. Skrinde.**

This Court described the "takings" analytical framework in *Pettro v. U.S.,* 47 Fed.Cl. 136, 144-145 (2000):

> A takings claim requires a two-step analysis in which a court first determines whether a plaintiff possesses a valid property right affected by governmental action, and then, if the plaintiff does possess a compensable property right, the court decides if the governmental action at issue constituted a taking of that right. *Karuk Tribe of Cal. v. Ammon,* 209 F.3d 1366 (Fed.Cir.2000), 209 F.3d 1366, 1374 (Fed.Cir.2000). A takings plaintiff must have a legally-cognizable property interest, *Skip Kirchdorfer, Inc. v. United States,* 6 F.3d 1573, 1580 (Fed.Cir.1993), such as the right of possession, use or disposal of the property. *See Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 435, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) (citing *United States v. General Motors Corp.,* 323 U.S. 373, 378, 65 S.Ct. 357, 89 L.Ed. 311 (1945)); *Karuk Tribe of Cal. v. Ammon,* 209 F.3d 1366, 1374-75... If a plaintiff has a valid property interest, the government "takes" that interest by destroying, physically occupying, or

excessively regulating it for a public purpose. *Boyle v. United States,* 200 F.3d 1369, 1374 (Fed.Cir.2000). Consistent with this notion, the United States Supreme Court has noted that most takings cases fall within two distinct classes:

Where the government authorizes a physical occupation of property (or actually takes title), the Takings Clause generally requires compensation. But where the government merely regulates the use of property, compensation is required only if considerations such as the purpose of the regulation or the extent to which it deprives the owner of the economic use of the property suggest that the regulation has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole. The first category of cases requires courts to apply a clear rule; the second necessarily entails complex factual assessments of the purposes and economic effects of government actions. *Yee v. City of Escondido, Cal.,* 503 U.S. 519, 522-23, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992) (citations omitted); *accord Abrahim-Youri v. United States,* 139 F.3d 1462, 1465 (Fed.Cir.1997) (physical takings are "based on an outright governmental seizure or occupation of private property," while regulatory takings are "based on a regulatory imposition that constrains an owner's continuing use of property"), *cert. denied,* 524 U.S. 951, 118 S.Ct. 2366, 141 L.Ed.2d 735, *reh'g denied,* 524 U.S. 970, 119 S.Ct. 14, 141 L.Ed.2d 775 (1998).

In the first class of physical occupations, even if the government's action falls short of a formal, physical invasion of a plaintiff's property, there may still be a taking of that property, by inverse condemnation, "where government action has destroyed the owner's use and enjoyment of his property thereby depriving the owner of all or most of his interest in the property." *See Yuba Natural Resources, Inc. v. United States,* 821 F.2d 638, 640 (Fed.Cir.1987) (*Yuba IV* ) [FN10]; *see also Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1014, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (noting the functional equivalence between a "practical ouster" of an owner's possession and a "direct appropriation" of that property). Thus, takings do not necessarily require physical invasion by the government or physical restraint of a plaintiff's use of property. *Yuba Goldfields, Inc. v. United States,* 723 F.2d 884, 887 (Fed.Cir.1983) (*Yuba II* ). In addition, once a taking has occurred, subsequent actions by the government cannot relieve it of the obligation to compensate a property owner for the period during which the owner's rights were abridged. *Tabb Lakes, Ltd. v. United States,* 10 F.3d at 800 (citing *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 321, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987)).

FN10. The United States Supreme Court has explained:

Inverse condemnation should be distinguished from eminent domain. Eminent domain refers to a legal proceeding in which a government asserts its authority to condemn property. Inverse condemnation is "a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." *Agins v. City of Tiburon,* 447

> U.S. 255, 258 n. 2, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980); *accord Tabb Lakes, Ltd. v. United States,* 10 F.3d 796, 800 & n. 3 (Fed.Cir.1993).

Ms. Mohlen and Mr. Skrinde own the dock, boathouse, boat hoist and floating dock. By denying to the plaintiffs the right to maintain and repair their property, the government makes the structures illegal and require their removal and destruction. The revocation of the right to maintain and repair the real property destroys completely its economic value to the owner.

**4. Real Estate Property Interests are Cognizable under the Fifth Amendment.**

> **"**All real estate property interests are cognizable under the Fifth Amendment. *See Cienega Gardens,* 331 F.3d at 1329. (stating that " '[e]very sort of [real property] interest the citizen may possess' counts as a property interest under the Fifth Amendment") (quoting *United States v. Gen. Motors Corp.,* 323 U.S. 373, 378, 65 S.Ct. 357, 89 L.Ed. 311 (1945))**."**

> *Norman v. U. S.*, 63 Fed. Cl. 231, 245 (Fed. Cl. 2004).

Defendant relies upon three cases for the proposition that a "real estate license is not properly viewed as a compensable property interest." Defts. Memo. at 6-7. But none of the cases cited by defendant involve *real estate*. Rather, they concern fishing permits issued pursuant to a statute which specifically provided that the permits were revocable. *American Pelagic Fishing Company v. United States*, 379 Fed. 3d 1363 (Fed. Cir. 2004); *Conti v. United States*, 291 Fed. 3d 1334 (Fed. Cir. 2002); *Arctic Fisheries v. United States*, 59 Fed. Cl. 360, 371 (2004).

**5. Defendant's Illegal Revocation of the Permit Results in a Taking.**

The nature of the property rights held by Ms. Mohlen and Mr. Skrinde are determined by reference to state law. *Hansen v. U. S.*, 65 Fed. Cl. 76, 123 (2005). Under state law, "where a party has made substantial expenditures in reliance on a license, the license acts, for all purposes, as an easement, estopping the grantor and his successor from revoking it."

*Noronha v. Stewart,* 199 Cal.App.3d 485, 490 (1988).

Defendant retained *limited* discretion to suspend, revoke or modify the nationwide permit which allowed Ms. Mohlen to maintain and improve her structures. This discretion to "suspend, modify or revoke authorizations under an NWP" "may be used ... only to further condition or restrict the applicability of an NWP for cases where they [district or division engineers] have concerns for the aquatic environment under the Clean Water Act... or for any factor of the public interest." 33 C. F. R. 330.1(d). But defendant did not revoke the permit for the property in issue here for one of these laudatory purposes– instead it acted to "support illegal efforts by the City of Alameda to retaliate against plaintiffs for the exercise of their constitutionally protected rights to petition the City for a hearing in connection with other issues involving this real property." Complaint, par. 5.

Defendant's argument that the permit is revocable is unavailing in this case because the conditions for revocation were not met.

**6. Defendant's Argument that the License Expires is Irrelevant.**

Defendant urges that because the license has an expiration date, and because it expired shortly before the sale of the property, that no taking occurred. But the taking occurred a year earlier when the permit was revoked. Complaint, exhibit 3. Had the permit not been revoked, it would have been a trivial matter to renew the license. To deny a taking merely because the license has an expiration date is equivalent to saying that there can never be a taking of a tenancy, because tenancies end.

**7. Jurisdiction Properly Lies in This Court.**

Defendant argues that the claim raised sounds in tort and that, therefore, that this

Court lacks jurisdiction. However, the rule of *Alabama Hospital Association v. U. S.*, 656 Fed. 2d 606, 610 (Ct. Cl. 1981) applies here:

> It is equally well settled that where a claim appears to be within our jurisdictional statute, as for example one founded on statute or contract, that claim is not removed from our jurisdiction merely because a plaintiff must make a constitutional argument to prevail. Gentry v. United States, 212 Ct.Cl. 1, 5-8, 546 F.2d 343, 345-346 (1976).

Similarly this Court held in *Hansen v. U. S.*, 65 Fed. Cl. 76 (2005) that

> "[i]t is not fatal to a plaintiff's claim or Court of Federal Claims' jurisdiction if government alleges that facts might give rise to a tort; instead, so long as there is some material evidence in the record that establishes predicates for a traditional takings claim, including unreasonable interference of a property interest by the government that is both substantial and continuous, a showing of legal, or "proximate" causation, and existence of at least broad authorization for governmental acts involved, plaintiff succeeds in demonstrating subject matter jurisdiction based on the Tucker Act and Taking Clause of the Fifth Amendment.

Primarily, plaintiffs allege a claim for the taking of their property. Their due process and equal protection arguments defeat the potential defense that defendant had discretion to revoke the nationwide permit under which maintenance, repairs and improvements to the structures were being performed. Simply put, the exercise of discretion to revoke the permit cannot be exercised in a manner which is against due process and equal protection because that discretion can only be exercised appropriately over concerns for the aquatic environment or public interest.

There is frequently a relationship between inverse condemnation and tortious conduct since one frequently causes the other. But that does not divest this Court of jurisdiction:

> In *Ridge Line, Inc. v. United States,* the United States Court of Appeals for the Federal Circuit (Federal Circuit) specifically addressed the relationship between takings claims and tort claims, stating that " '[i]nverse condemnation law is tied to, and parallels, tort law.' "

> [Footnote omitted] 346 F.3d 1346, 1355 (Fed.Cir.2003) (quoting 9 Patrick J. Rohan & Melvin A. Reskin, *Nichols on Eminent Domain* § 34.03[1] (3d ed. 1980 & Supp.2002)). The Federal Circuit in *Ridge Line* set out a two-part test for "distinguishing potential takings from possible torts":
>
> First, a property loss compensable as a taking only results when the government intends to invade a protected property interest or the asserted invasion is the direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the action.
>
> Second, the nature and magnitude of the government action must be considered. [T]o constitute a taking, an invasion must appropriate a benefit to the government at the expense of the property owner, or at least preempt the owner[']s right to enjoy his property for an extended period of time, rather than merely inflict an injury that reduces its value. *Ridge Line*, 346 F.3d at 1355-56 (quotations and citations omitted); *see also Moden v. United States,* 404 F.3d 1335, 1342 (2005) (reiterating the two-part analysis set out in *Ridge Line*).
>
> *Banks v. U.S.*, 69 Fed. Cl. 206, 212 (2006).

**8. Ms. Mohlen and Mr. Skrinde are Entitled to the Market Value of the Property Taken.**

Defendant argues that because the government created the value by issuing a permit, the government cannot be made to pay for the loss of value when it revoked the permit. Defendant errs because the value lost is the value of the structures taken, that is, the value of the pier, boathouse, boat hoist and floating dock owned by Ms. Mohlen and Mr. Skrinde. The value lost here is not the value of property owned by the government. As the Court held in *U. S. v. Fuller*, 409 U.S. 488. 500:

> To understand why compensation is not required in such cases, it is important to distinguish the Government's role as condemnor from its role as property owner. While as condemnor the Government must pay market value, as property owner it may change the use of its property as if it were a private party, without paying compensation for the loss in value suffered by neighboring land.

In the case at bar, by revoking the permit to maintain, repair and improve the structures owned by

Ms. Mohlen and Mr. Skrinde, the government essentially destroyed the structures, and thereby condemned them. The government must pay, therefore, for the market value of the structures which it took.

Dated: March 6, 2006

/s/________________________
Laurence F. Padway
Attorney for plaintiffs

## PROOF OF SERVICE

I am a citizen of the United States, employed in the County of Alameda, State of California. I am over the age of 18 and not a party to this action. My business address is 1516 Oak Street, Suite 109, Alameda, California 94501. On the date set forth below, I caused the following document(s) to be served as follows:

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

_X____ **MAIL** – I am readily familiar with this office's practice for collection and processing of correspondence for mailing with the United States Postal Services. Pursuant to said practice, each document is placed in an envelope, the envelope is sealed, with postage fully prepaid and deposited at or before the close of business.

____ **FACSIMILE** – I served a true copy of the aforementioned document by use of facsimile machine on the parties in this action to the numbers as set forth below. The facsimile machine I used complied with California Rules of Court, Rule 2003 (3) and no error was reported by the machine. Pursuant to Rules of Court, Rule 2008 (e) I caused the machine to print a transmission record of the transmission, a copy of which is attached to this Declaration.

___ **PERSONAL SERVICE**– Delivered by hand to the addressee addressed as set forth below.

___ **OVERNIGHT DELIVERY** – By causing a true copy to and/or original thereof to be sent via overnight delivery.

**Mark Ted Romley**
U.S. Department of Justice - ENRD - NRS
P.O. Box 665
Washington, DC 20044-0663
(202) 305-0458
Fax: (202) 305-0506
Email: mark.romley@usdoj.gov

I declare the foregoing under the penalty of perjury. Executed on March 6, 2006 at Alameda, California.

/s/_________________________
Laurence F. Padway