IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| RITA MOHLEN and<br>RICHARD SKRINDE,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 05-1179L<br><br>Hon. Marian Blank Horn |

**DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant hereby submits its Reply Memorandum in Support of Defendant's Motion to Dismiss Plaintiffs' Complaint. Defendant respectfully requests that this Court dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"). As Defendant explained in its opening memorandum, the Plaintiffs do not hold a compensable property interest and have failed to allege government action sufficient to establish a taking. Defendant also respectfully submits that to the extent Plaintiffs seek recovery on the basis of alleged Due Process or Equal Protection violations, those claims must be dismissed as being outside of this Court's jurisdiction, pursuant to RCFC 12(b)(1).

Plaintiffs filed their Opposition to Defendant's Motion to Dismiss on March 6, 2006.[1/]

[1/] By order dated March 13, 2006, the Court stayed further briefing on Defendant's Motion to Dismiss because "the parties indicated that discovery may be necessary and that the defendant's

Docket No. 8. In their Opposition, Plaintiffs argue that the pier, boathouse, boat hoist and floating dock that were built on federal property pursuant to a permit and a license granted by the Army Corps of Engineers (the "Corps") are real property. Pltfs.' Opp. at 1. Plaintiffs claim that because Defendant revoked their right to repair and maintain that real property, Defendant requires the property's "removal and destruction," thus "destroying completely its economic value to the owner." Id. at 4. Plaintiffs opine that this amounts to a condemnation of their property for purposes of the Fifth Amendment. Pltfs.' Opp. at 8. However, as we demonstrated in our Motion to Dismiss and as we reconfirm infra Section II, Plaintiffs do not hold a property interest cognizable under the Fifth Amendment.

Additionally, as we demonstrate infra Section III, even if Plaintiffs did hold a property interest, Defendant's only duty was to allow Plaintiffs to remove the improvements they placed on federal land.

## I. FACTUAL BACKGROUND[2/]

In order to legally repair and maintain their residential pier, boathouse, boat hoist and floating dock located in the waters of the United States and on federal property, Plaintiffs were required to obtain two approvals from the Corps. First, Plaintiffs needed permission to place structures in the navigable waters of the United States, of which the Oakland Inner Harbor Tidal Canal ("OIHTC") is one. In November, 1994, Plaintiff Rita Mohlen obtained this permission from the Corps in the form of a permit granted pursuant to the Nationwide Permit 3 program

---

motion to dismiss may be premature . . . ." Docket No. 10. In an order dated, May 2, 2006, the Court lifted the stay and reinitiated the briefing schedule. Docket No. 12.

[2/] The following facts are derived from Plaintiffs' Complaint and are not disputed for the purposes of this motion only.

("NWP 3"). Def.'s Ex. 1. The Corps' authority to implement the NWP 3 program springs from Section 10 of the River and Harbor Act ("RHA"), 33 U.S.C. § 403, and its implementing regulations, 33 C.F.R. Part 330. NWP 3 authorizations are granted for projects that are expected to have minimal impacts and are subject to the District Engineer's "discretionary authority to modify, suspend, or revoke a case specific activity's authorization under an NWP." 33 C.F.R. § 330.5(d) (emphasis added).

The second authorization Plaintiffs needed from the Corps in order to maintain and repair their residential pier, boathouse, boat hoist and floating dock was a "real estate license." A Corps real estate license is only required when a person wishes to build a structure, or structures, on land owned by the Corps, like the OIHTC. See 10 U.S.C. §§ 2667-2668; 32 C.F.R. §§ 643.71-643.74. In October, 2000, the Corps granted Plaintiff Rita Mohlen a five-year real estate license which allowed her "to maintain and repair an existing pier, boat house, boat hoist and floating dock . . ." in the OIHTC behind the Marina Drive property. Compl., Ex. 1 at 1.

On August 19, 2004, the Corps sent a letter to Plaintiffs' attorney revoking the NWP 3 permit authorization which, in conjunction with the real estate license, had allowed Plaintiffs to repair and maintain the residential pier, boathouse, boat hoist and floating dock behind the Marina Drive property. Id., Ex. 3. The Corps' chief bases for the revocation were that Plaintiffs' project had grown in size such that it exceeded the scope of a "Maintenance" project as defined by the regulations governing NWP 3 permit approvals ;[3] that Plaintiffs were in violation of their real estate license because the Marina Drive property carried building code

---

[3] To qualify for an NWP 3 permit a "maintenance" project should amount to a "[m]inor deviation[] in [a] structure's configuration." Compl., Ex. 3. Plaintiffs' dock replacement project was designed to be much larger than the dock it replaced. See Compl., Ex. 2.

violations;[4] and that Plaintiffs' proposed project was not consistent with the building moratorium that was in place on the OIHTC. Id. Moreover, the Corps cited the objection of a neighboring property owner and the fact that Plaintiffs' dock would extend "several dozen feet into the Canal" before informing Plaintiffs that the "public interest factors"[5] weighed against allowing Plaintiffs to proceed with their dock project. Id. While the revocation terminated Plaintiffs' right to carry out further work on the structures they had placed on federal property, Plaintiffs were also "invite[d] . . . to apply for a permit that adhere[d] to the moratorium on new construction [on the OIHTC]." Id. Consistent with the Corps-imposed moratorium, Plaintiffs could have, for example, reapplied for a permit that allowed them to maintain or repair the existing structures in-place and without any expansion. Defendant is not aware that Plaintiffs made any applications attempting to permit a scaled-down project, nor do Plaintiffs allege that they submitted such an application.

Because Plaintiffs' repair and maintenance activities required both the real estate license and the NWP 3 permit, which were granted to Plaintiff Rita Mohlen alone, Plaintiffs could not legally proceed with their dock project after the latter was revoked. Id.

---

[4] Plaintiffs have pending a separate suit against the City of Alameda challenging the validity of the city's zoning program. Mohlen v. City of Alameda, No. C 03 3162 CW (N.D. Cal. filed Oct. 13, 2005).

[5] Plaintiffs allege that the Corps revoked their NWP 3 permit to "support illegal efforts by the City of Alameda." Pltfs.' Opp. at 5; Compl. ¶ 5. The August 19, 2004 revocation letter, which Plaintiffs have attached as Exhibit 3 to their Complaint, clearly refutes this allegation. In that letter, the Corps cites not only Plaintiffs' city code violations as a basis for the revocation, but also cites Plaintiffs' failure to keep their work within the ambit of a "Maintenance" project, a neighbor's objection to the project, the size of the proposed dock and the OIHTC building moratorium as additional bases. Compl., Ex. 3.

## II. UNDER ANY SET OF FACTS, PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED BECAUSE THEY LACK A COMPENSABLE PROPERTY INTEREST.

As we discussed in-depth in our Motion to Dismiss, neither a permit nor a license rises to the level of a compensable property interest for purposes of the Fifth Amendment. Mot. to Dis. at 6-8 (discussing American Pelagic Fishing Company v. United States, 379 F.3d 1363 (Fed. Cir. 2004); Conti v. United States, 291 F.3d 1334 (Fed. Cir. 2002)).

Plaintiffs' attempts to distinguish American Pelagic and Conti are based on meaningless factual differences between those cases and the case at bar. Pltfs.' Opp. at 4. First, Plaintiffs posit that because a "real estate license" is at issue here, and because neither American Pelagic nor Conti involved real estate, those authorities have no applicability to the matter before the Court. Id. As we explained in our Motion to Dismiss, the inquiry of whether a person holds a property interest for purposes of the Fifth Amendment focuses on the nature of the rights granted to the permit or license holder, not on the nature of the terrain where the rights are granted. Mot. to Dis. at 6-8. In Conti, for example, the Federal Circuit focused on the fact that a permit holder's bundle of rights lacks the "sticks" of security (the permit there, like the license and permit here, was revocable), alienability and exclusivity and thus decided that the permit holder there did not have a property interest cognizable under the Fifth Amendment. 291 F.3d at 1342. American Pelagic adopted and confirmed this analysis. 379 F.3d at 1374. Whether utilized at sea or on land, permits and licenses lack crucial indicia of a property interest and their holders cannot bring a Fifth Amendment takings claim rooted in them. See Alves v. United States, 133 F.3d 1454 (Fed. Cir. 1998) (holding that grazing permits and preferences for the use of federal land do not give rise to a cognizable claim under the Fifth Amendment); Klump v. United States,

50 Fed. Cl. 268, 270 (2001), aff'd, 30 Fed.Appx. 958, 962 (Fed. Cir. 2002) (noting that "the relevant case law all unambiguously establish[es] that a grazing permit is not a compensable property interest.").

Second, Plaintiffs mistakenly imply that neither the NWP 3 nor the real estate license had revocability built into their respective structures like the fishing permits at issue in Conti and American Pelagic did. Pltfs.' Opp. at 4. The real estate license was, on its face, "revocable at will"and the regulations underlying Plaintiffs' NWP 3 permit stated that the Corps' District Engineer had the "discretionary authority to modify, suspend or revoke . . ." a permit after evaluating a list of criteria. See Compl., Ex. 1 at 1; 33 C.F.R. § 330.5(d). Accordingly, Plaintiffs have not distinguished this matter from American Pelagic or Conti in any meaningful manner.

In their Opposition, Plaintiffs claim that "[b]y denying to the plaintiffs the right to maintain and repair their property, the government makes the structures illegal and require their removal and destruction. The revocation of the right to maintain and repair the real property destroys completely its economic value to the owner." Pltfs.' Opp. at 4. This argument, however, ignores the fact that neither Plaintiffs' real estate license nor their NWP 3 permit give rise to a compensable property interest. The "the right to maintain and repair . . . ," the taking of which Plaintiffs now complain, was subsumed within the NWP 3 permit and the real estate license. After all, it was those documents which granted Plaintiffs' "right" in the first instance. Thus, even though Plaintiffs have somewhat clarified the interest they seek to vindicate, they still have not come forward with a compensable property interest and under any set of facts they cannot state a claim upon which relief can be granted.

## III. EVEN ASSUMING THAT PLAINTIFFS HAVE A COMPENSABLE PROPERTY INTEREST, THEY HAVE FAILED TO ALLEGE FACTS SUFFICIENT TO STATE A CLAIM OF A TAKING

In their Opposition, Plaintiffs now state, in a manner seemingly contrary to what was stated in their Complaint, that what they really are seeking is compensation for the value of the structures built behind the Marina Drive property pursuant to the NWP 3 permit and real estate license.[6] Pltfs.' Opp. at 7-8. Plaintiffs assert that these structures constitute real property and their interest in them is protected by the Fifth Amendment. Id. at 1. They further claim that because Defendant revoked the NWP 3 permit, "it essentially destroyed the structures, and thereby condemned them." Id. at 8. Plaintiffs' position is mistaken.

With respect to the structures repaired, built or maintained pursuant to the NWP 3 and the real estate license, Defendant's only obligation after revocation of the NWP 3 permit was to not physically harm or occupy the improvements and to not prevent Plaintiffs from removing the improvements if they wished to so do. See Turntable Fishery & Moorage Corp. v. United States, 52 Fed. Cl. 256, 262 (2002).

Turntable involved a takings claim brought against the United States Forest Service by plaintiffs who had been allowed to build boathouses and other improvements on federal land pursuant to special use permits. Id. at 257. The special use permits directed that in the event of

---

[6] This position seems at odds with Paragraph 8 of Plaintiffs' Complaint. Plaintiffs therein differentiate between the "real property located at 3017 Marina Drive . . ." and "the adjacent dock, boat house, boat hoist and related structures." Compl. ¶ 8 (emphasis added). In their opposition though, Plaintiffs seem to be positing that the "real property" from which they claim value has been taken is the dock, boat house, boat hoist and related structures. Pltfs.' Opp. at 7-8.

revocation, the plaintiffs had the ability, and, in fact, the obligation, to remove any structures placed on federal land. Id. at 262. Seizing on the fact that the plaintiffs' respective property interests were so specifically limited, the court in Turntable found that the only obligation the Forest Service owed to the plaintiffs with respect to the property constructed pursuant to the permits was the duty to allow its removal. Id. at 263.

Plaintiffs' real estate license in this case contained a clause, similar to the one found in Turntable, which provided that upon termination of the real estate license "the grantee shall vacate the premises [and] remove the property of the grantee." Compl., Ex. 1 at 5. Thus, any property interest Plaintiffs, the "grantees," may have had in the structures they claim have been taken, was specifically limited in the same manner as the interests held by the claimants in Turntable. Because of this limitation, Defendant's only duty vis-a-vis the allegedly taken structures was to allow the removal of that property. Turntable, 52 Fed. Cl. at 263.

Defendant did not prevent removal of Plaintiffs' property in any way, nor have Plaintiffs alleged such action by Defendant.[7/] Accordingly, even if this Court finds that Plaintiffs have a property interest, it should, consistent with Turntable, find that Plaintiffs have failed to state a takings claim for which relief can be granted. Turntable, 52 Fed. Cl. at 263.

## IV. CONCLUSION

For the reasons stated in its Motion to Dismiss and those stated above, Defendant

[7/] Plaintiffs real estate license also provided that if the grantee "should fail or neglect" to remove its property upon termination of the license, the property would either "become the property of the United States without compensation therefor . . ." or the property would "be removed . . . and no claim for damages against the United States . . ." could be maintained. Compl., Ex. 1 at 5. Accordingly, even had Defendant acted to physically remove the structures at issue following its revocation of Plaintiffs' permit and the expiration of the real estate license, Plaintiffs still would not state a takings claim.

respectfully requests that Plaintiffs' Complaint be dismissed in its entirety.

Dated: May 15, 2006.

Respectfully submitted,
SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division

s/ Mark T. Romley

Mark T. Romley
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0458
Fax: (202) 305-0274