Laurence F. Padway, Calif. Bar # 83914
Law Offices of Laurence F. Padway
1516 Oak Street, Suite 109
Alameda, California 94501
Telephone: (510)814-6100
Facsimile : (510)814-0650

Attorneys for Plaintiffs
RITA MOHLEN and RICHARD SKRINDE

UNITED STATES COURT OF CLAIMS

| | |
|---|---|
| RITA MOHLEN and ,<br>RICHARD SKRINDE<br><br>Plaintiffs,<br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendants.<br>________________________________/ | Case No. 05-1179L<br><br>DECLARATION OF<br>RICHARD SKRINDE |

I, Richard Skrinde, hereby declare under penalty of perjury that:

1. I am one of the plaintiffs in this case. This declaration addresses the questions of the Court in its Order filed September 5, 2006.

**QUESTION 1) Plaintiffs claim that their substantial expenditures in reliance on the government's Nationwide Permit granted the plaintiffs an easement. What actions did the plaintiffs take, generating expenditures, in reliance on the Nationwide Permit? Were the boathouse and dock present on the property when plaintiffs purchased it or did plaintiffs build the boathouse and dock?**

2. Our home at 3017 Marina Drive is one of many similar properties on Marina Drive having structures which cross the government property line on the Oakland estuary. We will present

an aerial photograph at the hearing, which is too large to file with this declaration, which shows the many homes and docks, and the pier and bulkhead lines of the Army. We attach as exhibit 1 to this declaration a survey which shows our home and the location of the government property line. A larger copy of this survey will be brought to the hearing. It shows the government property line crosses through our rear deck and hot tub, and through an accessory building which houses an office and boathouse. The boathouse is completely located on government land.

3. When we purchased the property, the boathouse, dock and deck were all existing structures. These had been built, presumably under authority of an indorsement made by the war department on June 3, 1913, which permitted

> "owners of property abutting the lands included in the right of way acquired by the United Sates for the Oakland Tidal Canal... are hereby authorized and permitted to occupy with open work non-permanent structures for wharf purposes, the portion of the stripe of U.S. property fronting their respective properties and situated between pierhead and bulkhead lines approved June 20, 1915, without special lease or charge of any kind, it being expressly understood that this permission is revocable at any time when this area may be required for purposes of navigation and shall not be construed as a relinquishment of the government title to the said right of way.

A copy of this endorsement is attached as exhibit 2. The bulkhead and pierhead lines are shown on aerial photograph we will bring to the hearing.

4. In 1986, the Army leased this land to the City of Alameda, as shown on the lease which is attached as exhibit 3. By ordinance passed in August, 1986, the City accepted the lease with the Army and took control over construction along the shoreline. Ordinance 2303, attached as exhibit 4.

5. The prior owners of our property, presumably acting under the authority granted by the Army or the City, or both, built a boathouse, pier and dock, apparently in the early 1970s. I would estimate the value of the improvements which existed on the property when we purchased it

as follows, in 1970 dollars:

| | | | |
|---|---|---|---|
| Pier | 1800 sq. ft. | @ $ 25 | $ 45,000. |
| Boathouse / hoist | 675 sq. ft (located on top of pier) | @ $ 40 | 27,000. |
| Floating dock | 280 sq. ft. | @ $ 20 | 5,600. |
| | | | $ 77,600. |

6. The Army lease appears to end by its terms in October, 1991. However, I have been informed that it was extended until the year 2000. When we purchased our home in 1994, our insurer insisted that we bring the waterfront structures on our property up to current code. As the lessee of the land, the City authorized us by an interagency agreement to directly obtain permits from the state and federal government. Exhibit 5 is a copy of this inter agency authorization. We therefore applied for and were issued a 1994 USACE Nationwide Regulatory Permit, as well as corresponding State and City permits. The 1994 USACE permit is attached as exhibit 6. The City's plan was to sublease the area behind each home to the homeowner. To that end, it required us to commit to signing such a lease. Exhibit 7 is a copy of our City Lease Commitment. However, the City never prepared these leases. Pursuant to the permits referenced above, we undertook the following work:

| | |
|---|---|
| The deteriorated structures were disassembled and removed | $12,650. |
| Eight existing wood pilings were jacketed with concrete | 4,935. |
| Five steel pilings were installed | 12,805. |
| A concrete stem wall was added along the bulkhead line | 3,540. |
| The pier was replaced in steel and wood | 31,790. |
| An upper deck / stairs were installed | 7,505. |
| The boathouse / hoist was rebuilt. | 19,940. |
| Shortly thereafter, under City permit, a hot tub was installed and the electrical service to the boathouse / hoist upgraded, | 9,525. |

| | |
|---|---|
| **Total expenditures under 1994 USACE Nationwide Permit** | **$102,775.** |

7. Additional safety issues were identified in a Marine Survey. We then obtained a 2000 USACE Real Estate License No. DACWO5-3-00-603, which I attach as exhibit 8, and a 2002 Nationwide Regulatory Permit, which I attach as exhibit 9. The real estate license was required because the City lease was no longer in effect. I was told by the Bay Conservation and Development Commission that they would not issue their permit unless we had a property interest in the waterfront, which they considered the Real Estate License to convey. Prior to issuing this permit, the Army sent representatives from both its Sacramento and San Francisco Districts to meet at my home with a representative of the Bay Conservation and Development Commission. They reviewed the entire file, including what were then 88 building code violations which the City of Alameda claimed to exist at our home. After this careful review, the Army issued us a license and permit, pursuant to which the following work was performed:

| | |
|---|---|
| Handrails on Pier replaced | 10,999. |
| Handrail / Windbreak added to boathouse roof | 4,986. |
| Wall of boathouse / hoist relocated, boat cradle replaced | 6,716. |
| Gangway to floating dock reoriented and rebuilt | 1,785. |

My wife and I had purchased a floating dock, but we were unable to install this because our permit was revoked while we were in the installation process. We ended up selling the floating dock for salvage and took a loss on this of $29,692.

| | |
|---|---|
| **Total expenditures under the 2000 license and permit** | **54,178** |
| **Total expenditures under all of the permits and license** | **$156,953** |

8. In order to assure that our plans met with the approval of the Army, in 2003, we

obtained an amendment to our license to conform it to our actual construction. A copy of this amendment is attached as exhibit 10. At the same time, we also amended the license for the same reason. A copy of this amendment is attached as exhibit 11.

9. The Army suspended our permit on May 6, 2004. A copy of the letter of suspension is attached as exhibit 12, and revoked it on August 19, 2004. A copy of the revocation letter is attached as exhibit 13. The facts claimed by the Army as forming the basis for the revocation were all known to it when it had issued the permit and license.

10. The Army would not allow us to apply for a new permit. It had declared a moratorium on new permits in 2000, which was supposed to last one year, but the moratorium is still in force six years later. See exhibit 14, letters announcing and maintaining the moratorium. The Army made an exception to the moratorium for a large commercial project on the estuary. Because of this exception, and because only one homeowner other than us had applied for an army permit or license, I believe that the only persons affected by the moratorium were my wife and I.

**Question 2. Plaintiffs claim that the government's revocation of the Nationwide Permit made the presence of the boathouse and dock illegal, thereby requiring destruction of the improvements. Did the plaintiffs or the government destroy or remove the boathouse and dock? If so, when?**

11. Following the revocation of the permit, the government demanded that my wife and I cease and desist from completing the rebuilding of the dock, or from repairing the existing dock. A coy of the cease and desist letter of September, 2004 is attached as exhibit 15.

12. The Army describes this as an "active regulatory enforcement action against you" in its letter of October 12, 2004, which is attached as exhibit 16.

13. Because of these letters, my wife and I, who had planned on installing the rest of

the dock we purchased, sold the dock for scrap, at a loss of $29,692. Further, when we sold the house, we had to disclose the position of the Army that these structures were illegal, which impaired the value of the home at the time of sale to the extent of approximately $300,000.

14. We sold the property with the boathouse and boat hoist remaining as illegal structures. The dock was sold partially rebuilt.

15. I attach as exhibit 17 some photographs of the rear yard and structures.

Executed this 11th day of September, 2006, at Ft. Lauderdale, Florida.

______________________

Richard Skrinde