Laurence F. Padway, Calif. Bar # 83914
Law Offices of Laurence F. Padway
1516 Oak Street, Suite 109
Alameda, California 94501
Telephone: (510)814-6100
Facsimile : (510)814-0650

Attorneys for Plaintiffs
RITA MOHLEN and RICHARD SKRINDE

UNITED STATES COURT OF CLAIMS

RITA MOHLEN and ,
RICHARD SKRINDE

Plaintiffs,

vs.

UNITED STATES OF AMERICA,

Defendants.
_______________________________/

Case No. 05-1179L

Hon. Marian Blank Horn

PLAINTIFF'S MOTION TO AMEND E-FILING OF SEPTEMBER 25, 2006

---

Plaintiffs, Rita Mohlen and Richard Skrinde, respectfully move to amend their e-filing of September 25, 2006, Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss (Docket No. 22). Plaintiff filed in error the wrong PDF document which contained only one page of plaintiff's brief. Plaintiff attaches a copy of the brief intended to be filed at Exhibit A.

Dated: September 25, 2006

_________________________
Laurence F. Padway
Attorney for plaintiffs

Exhibit A

Laurence F. Padway, Calif. Bar # 83914
Law Offices of Laurence F. Padway
1516 Oak Street, Suite 109
Alameda, California 94501
Telephone: (510)814-6100
Facsimile : (510)814-0650

Attorneys for Plaintiffs
RITA MOHLEN and RICHARD SKRINDE

UNITED STATES COURT OF CLAIMS

RITA MOHLEN and ,
RICHARD SKRINDE

Plaintiffs,

vs.

UNITED STATES OF AMERICA,

Defendants.
_______________________________/

Case No. 05-1179L

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO DISMISS**

TABLE OF CONTENTS

| | | PAGE |
|---|---|---|
| TABLE OF AUTHORITIES CITED | | ii |
| 1. | Recordation, or the Lack Thereof, of the Skrinde Deed Has No Bearing on Mr. Skrinde's Title. | 1 |
| 2. | Any Further Attempt to Exhaust Administrative Remedies Would Have Been Futile. | 2 |
| 3. | The Navigability of the Oakland Inter Harbor Tidal Canal Does Not Affect the Existence of the Property Right to Build Structures for Wharf Purposes | 5 |
| 4. | Conclusion. | 8 |

TABLE OF OF AUTHORITIES CITED


CASES PAGE

B.C.E. Development v. Smith

215 Cal. App. 3d 1142 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

O'Sullivan v. Griffith

153 Cal. 502 (1908). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

U. S. v. Fuller

409 U.S. 488 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Warnock v. Harlow

96 Cal. 298 (Cal. 1892) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FEDERAL STATUTES

33 U.S. C. 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

33 C. F. R. Section 330.5(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

CALIFORNIA STATUTES

California Civil Code Section 1217 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

California Civil Code Section 1462 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

California Civil Code Section 1468. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

The Court requested briefing on the following questions:

1. Does the Lack of Recordation of Mr. Skrinde's Deed Affect His Ownership Interest?

2. Have the Plaintiffs' Exhausted their Administrative Remedies?

3. Do the Navigability of the Oakland Inner Tidal Canal Affect the Property Interest Claimed by Plaintiffs?

At oral argument, the Court inquired of counsel concerning the distinction between this case and *U. S. v. Fuller*, 409 U.S. 488 (1973). We explained how *Fuller* supports our theory of the case at page 7 of our opposition memorandum, and have nothing to add to that discussion here.

**1. Recordation, or the Lack Thereof, of the Skrinde Deed Has No Bearing on Mr. Skrinde's Title.**

Under California law, the recordation of a deed is unnecessary. California Civil Code 1217. The recording of a deed provides constructive notice of title to subsequent purchasers and sets the priority of title:

> At common law, recording was not necessary to the validity of the deed, or to make it effective against all subsequent conveyances; and such is the law now, except so far as our recording acts have expressly, or by necessary implication, limited their effect and operation. The object of these recording acts is to give "constructive notice of the contents thereof to subsequent purchasers and mortgagees" (Civ. Code, sec. 1213) and to declare the effect of the failure to record a prior conveyance as against a subsequent purchaser or mortgagee of the same property whose conveyance is first recorded (Civ. Code, sec. 1214);
>
> *Warnock v. Harlow* 96 Cal. 298, 305-306 (Cal. 1892).

There are many reasons deeds are not recorded. This occurs most commonly, in counsel's experience, when an inter-family transfer is intended primarily to effect a testamentary disposition, and the parties do not wish to undertake the expense of a will or living trust.

In any event, the recordation of the deed to Mr. Skrinde, or lack thereof, has no effect in the present case. He owns the property equally with his wife, Ms. Mohlen. As requested by the Court, the deeds are attached to the Declaration of Richard Skrinde, filed herewith.

**2. Any Further Attempt to Exhaust Administrative Remedies Would Have Been Futile.**

The government called a community meeting on February 3, 2005 to explain its moratorium and plans for the two mile long stretch of the Oakland Inter Harbor Tidal Canal. The minutes of that meeting, which are attached to the Declaration of Laurence F. Padway, recite that the Army had imposed a moratorium on permits "to temporarily disallow construction in the OIHTC. until the Corps conceives a better way to manage the OIHTC." *Id*., at page 1. The Corps attorney explained that

> "[b]ecause the Corps–as property owner–could potentially be liable for accidents and injuries on its land, the Corps had called a 'time-out' until it could figure out how to tackle the issue; hence the moratorium."

In a question and answer session, the Corps was asked, "[i]s your main concern the liability of ownership?" and it answered "Yes. Owning property is not among the Corps' mission." The *only* exception to the moratorium, the Corps. explained, is a "safety repair exception assuming the permit applicant can demonstrate that such repairs are immediately necessary." *Id.,* at p. 3.

When asked why the Corps approved a major new pier at the request of developers on the Oakland side of the canal, the Corps. responded that it "mistakenly approved a permit despite the moratorium," and that it "regrets its error." *Id*., at page 4. The Corps did not explain why, after discovering its "mistake" in granting a permit to plaintiffs, it revoked the permit, but, after discovering its "mistake" in allowing the Oakland developers to build their much larger pier, the Corps. did not revoke the permit, but simply allowed the construction.

Notwithstanding the moratorium, plaintiffs made *extensive*, but futile, efforts to either overturn the revocation of their permit, or obtain a new permit by modifying the structure so that it

satisfied the Army.

The Army responded to these entreaties eventually by requiring, as a condition of any permit, that six neighbors submit letters approving the construction, and that the City of Alameda submit a letter that none of the plaintiffs' property had any building code violations. Declaration of Laurence F. Padway, exhibit 2. The Army required, as a precondition to even considering the issuance of a permit:

> "(a) that the current residents of 3005 Marina Drive, 3009 Marina Drive, 3011 Marina Drive, 3019 Marina Drive, 3025 Marina Drive and 3027 Marina Drive (i.e. your neighbors) each submit letters to the District indicating their approval of the 'floating dock' currently installed behind your residence;"

Moreover, even if all six neighbors had complied, this was just a "Catch-22" anyway. The City of Alameda satisfied itself that there were, in fact, no building code violations on the Mohlen/Skrinde residence, but the City could not tell whether or not there were violations which resulted from the lack of compliance with Army regulations. The City wrote on August 2, 2005, that the only code violations on the property were those could only be cured by the Army's adoption of a plan which eliminated the now six year old moratorium and set out the building requirements for the Canal. (Declaration of Laurence Padway, exhibit 3, letter from Gregory McFann, Acting Planning and Building Director, August 2, 2005):

> "All City of Alameda issues noted on the City of Alameda – Address Activity Report 3017 Marina Drive have been satisfied as of 7/18/04. Any outstanding issues regarding improvements extending beyond the pierhead and/or bulkhead lines as determined by the Army Corps of Engineers remain open and will be addressed by the Army Corps of Engineers, the City of Alameda, and the owners of said affected properties along Fernside Boulevard and Marina Drive. Additional entities/agencies could be involved in any process regarding the determination of land use and ownership. The time required for any type of resolution is completely unknown."

We have found no precedent for demanding approval by the neighbors as a condition for even considering the issuance of a permit to the plaintiffs. This condition is wholly unrelated to

the only exception which the Army claimed to exist from its moratorium, namely a

> "safety repair exception assuming the permit applicant can demonstrate that such repairs are immediately necessary."
>
> Minutes of meeting February 3, 2005, at page 3, exhibit 1 to the Declaration of Laurence F. Padway.

The continually changing unique requirements for the plaintiffs to regain a permit demonstrate the futility of making the effort. The Army:

1. Three times approved specific drawings for the structures when they issued and amended the license and permit.

2. Specifically did not apply the moratorium to these structures because the initial permission for them was granted before the moratorium was imposed.

3. Revoked the permit because of building code issues raised by the City of Alameda, but refused to reinstate the permit when the City was satisfied with everything except those items which were to be addressed by the Army as part of the plan to end the moratorium;

4. Issued a permit for a large dock to developers in Oakland, then called it a mistake but left its permit in place, whereas they issued a permit for plaintiffs, then called it a mistake and revoked it;

5. Although the Army required no one else, including the developers of the large dock in Oakland, to obtain approval from the neighbors before building, they imposed this requirement on the plaintiffs.

Plaintiffs anticipate additional evidence of futility will be obtained in the depositions of the City of Alameda, and the Army Corps of Engineers. These depositions were scheduled for

September 22, 2006 in California, but the Court directed that these be delayed until after the ruling on this motion.

**3. The Navigability of the Oakland Inter Harbor Tidal Canal Does Not Affect the Existence of the Property Right to Build Structures for Wharf Purposes.**

The Secretary of the Army may authorize construction of wharf structures in navigable waters. 33 U.S. C. 403. Pursuant to this statute, Henry Breckenridge, Assistant Secretary of War, granted "[t]he owners of property abutting the" Oakland Inter Harbor Tidal Canal, the right "to occupy with open work non-permanent structures for wharf purposes" the land between the pierhead and bulkhead lines, "without special lease or charges of any kind, it being expressly understood that this permission is revocable at any time when this area may be acquired for purposes of navigation..."

This grant allows the construction of the structures on the plaintiffs' property. While permission may be revoked, it may only be revoked "when this area may be acquired for purposes of navigation." Since the plaintiffs' structures do not interfere with navigation, and certainly do not interfere any more than do all the neighboring structures, the government has no basis to revoke the permit. Although the Rivers and Harbors Act grants discretion to the District Engineer to revoke a permit issued under an Nationwide Permit authorization, 33 C. F. R. Section 330.5(d), this discretion must be exercised in a manned consistent with the grant made by Assistant Secretary Breckenridge.

The government granted a property interest which runs with the ownership of the land by its June 3, 1913 grant. A "covenant" is created by words in the deed which constitute an agreement to do or refrain from doing a certain thing. *O'Sullivan v. Griffith*, 153 Cal. 502 (1908). Because the covenant is made "for the direct benefit of the property," it "runs with the land." California Civil Code 1462. The covenant relates to the use of the land and as it is sometimes said, it will "touch or concern the land." *B.C.E. Development v. Smith*, 215 Cal. App. 3d 1142, 1146 (1989). Therefore, whoever owns the land is both benefitted and burdened by the covenant. California Civil

Code Section 1468. In the traditional language of real property, the 1913 document grants an easement subject to reversion to the government in the event of a condition subsequent, namely the acquisition of the property for purposes of navigation.

The 1913 grant contains *all* of the rights normally associated with an easement containing a covenant running with the land. The abutting property owners, with the consent, or at least not the objection, of the government, have treated the grant as if it were an easement for almost 100 years. Dozens of docks, decks and piers have been constructed along Marina Drive without permits based solely on the 1913 grant. It appears, from documents provided to plaintiffs by the Army, that the plaintiffs' permit is the only one revoked, for any reason, in all that time. Declaration of L. Padway. Property owners have relied upon the stability and permanence of the grant in purchasing and improving their homes, and in selecting homes in which to raise their families.

The government argues that the permits and licenses are "revocable at will," but the grant from 1913 is not revocable at will. And that grant prohibits a requirement of any "special leases or charges" on the right to have and maintain wharf structures. This grant limits the government's ability to require permits, to refuse to grant permits or to revoke permits. Simply put, the permitting process must be accomplished in a manner which does not defeat the 1913 grant, or that process itself will become a taking of property. Accordingly, when analyzing the rights which belong to abutting landowners such as Mr. Skrinde and Ms. Mohlen, the rights analyzed must be those granted by the 1913 grant and not the usual bundle of rights associated with the permitting process.

Finally, the government errs in failing to distinguish between commercial rights involved in activities such as fishing, and rights associated with real property. Real property rights have been treated differently than commercial rights since the time of the Magna Carta. Real property has historically been considered more permanent than rights in personalty, and more readily compensable when taken by the government.

Because this grant is "without special lease or charges of any kind," the government has limited its ability to regulate the area by use of permits. The permits, if they can be required at all, must not interfere with either the grant of the easement nor can they impose a "special lease or charge." Because the permit at issue was revoked when there was no acquisition of the property for purposes of navigation, but rather, as alleged in the complaint, the revocation was for an improper purpose, that revocation effects a taking of property without compensation. The Court seemed concerned that there were several steps in this logic, but we believe the analysis is, in fact, simple:

1. The government granted the easement in 1913;
2. The government revoked the easement by revoking the permit;
3. The government can only revoke the easement if it is acquiring the property for purposes of navigation;
4. This was not the purpose of the revocation in issue;
5. Therefore, the government has taken the easement; and
6. The government must now pay fair compensation for its act.

The same analysis, and result, applies whether or not the canal is a navigable water.

**4. Conclusion.**

Whether considered an easement or some other interest, the right of abutting landowners to construct non-permanent wharf structures, such as piers, docks and boathouses, in the Oakland Inter Tidal Harbor Canal, is a valuable part of the real estate owned by the abutting owners. Once irrevocably granted by the government, it does not become revocable because the government decides to regulate it by a permitting process. The ability to regulate by permit is limited by the 1913 grant. While the government retained the right to maintain the navigation channel, and to order structures which interfere with navigation removed, that is an extremely minimal burden on the right of the abutting owners to have and maintain their wharf structures. Because that burden is so minimal, the right to have and maintain wharf structures is one which is protected by the Fifth

Amendment.

Because the granting and revocation of permits is limited by the 1913 grant, the permits may *say* that they are revocable at will, but they can only be revoked when revocation does not limit the rights of the abutting landowner under the 1913 grant.

The rights granted in 1913 remain in full force and effect, and it is these rights which must be analyzed to determine whether or not a taking under the Fifth Amendment occurred. And that analysis can only result in the conclusion that the government, b y revoking the permit and failing to grant a new one, took property rights granted to the abutting landowners in 1913.

The motion to dismiss should be denied. Moreover, as a first attack on the complaint, even were the motion to be granted, it should be granted with leave to amend the complaint.

Dated: September 25, 2006

Laurence F. Padway
Attorney for plaintiffs