Laurence F. Padway, Calif. Bar # 83914
Law Offices of Laurence F. Padway
1516 Oak Street, Suite 109
Alameda, California 94501
Telephone: (510)814-6100
Facsimile : (510)814-0650

Attorneys for Plaintiffs
RITA MOHLEN and RICHARD SKRINDE

UNITED STATES COURT OF CLAIMS

RITA MOHLEN and ,
RICHARD SKRINDE

Plaintiffs,

vs.

UNITED STATES OF AMERICA,

Defendants.

_________________________________/

Case No. 05-1179L

**PLAINTIFF'S SECOND SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO DISMISS**

In a informal conference call with the Court, additional briefing was requested on the issue of whether a taking or tort results from the actions in this case. Further:

1. It was agreed plaintiff would file the deeds to Ms. Mohlen and Mr. Skrinde with this filing rather than the prior one; and

2. Plaintiff could respond briefly to an argument by the government that they changed the pierhead and bulkhead lines, thereby eliminating the grant made in 1913.

**1. The Grant Made in 1913 Cannot be Affected by Subsequent Changes in the Pierhead and Bulkhead Lines.**

The Army contends that "the 1913 Act was Nullified." Government Br, at p. 4, because in 1929 the Army redrew the bulkhead and pierhead lines so that they were the same line, and the strip between them, where abutting property owners were allowed to place wharf structures, was eliminated.

The 1913 Act, however, did not refer to *any* bulkhead and pierhead line, but to those "pierhead and bulkhead lines approved June 20th, 1913." Since the 1929 lines are not the same as the lines approved on June 20th, 1913, they cannot affect the easement granted at that time.

**2. The Revocation of the Permit Effects an Inverse Condemnation of Plaintiffs' Property.**

This Court has jurisdiction over claims for inverse condemnation. *Testwuide v. U.S.*, 56 Fed. Cl. 755 (2003). However, jurisdiction only lies where the taking is appropriate except for the failure to pay compensation. *Alameda Gateway, Ltd. v. U. S.*,45 Fed. Cl. 757 (1999). In this case, plaintiffs can plead in the alternative that the taking was proper or improper. Or, as set out in *Del Rio Drilling Programs, Inc. v. U. S.* , 146 Fed. 3d 1358 (Fed. Cir. 1998):

> A compensable taking arises only if the government action in question is authorized. *See United States v. North Am. Transp. & Trading Co.,* 253 U.S. 330, 333, 40 S.Ct. 518, 64 L.Ed. 935 (1920). If the government action is unauthorized, "the acts of defendant's officers may be enjoinable, but they do not constitute taking effective to vest some kind of title in the government and entitlement to just compensation in the owner or former owner." *Armijo v. United States,* 229 Ct.Cl. 34, 663 F.2d 90, 95 (1981); *see Florida Rock Indus., Inc. v. United States,* 791 F.2d 893, 898 (Fed.Cir.1986). In a case such as this one, in which the alleged taking consists of regulatory action that deprives a property-holder of the enjoyment of property, government agents have the requisite authorization if they act within the general scope of their duties, *i.e.,* if their actions are a "natural consequence of Congressionally approved measures," *NBH Land Co. v. United States,* 217 Ct.Cl. 41, 576 F.2d 317, 319 (1978), or are pursuant to "the good faith implementation of a Congressional Act," *Southern Cal. Fin. Corp. v. United States,* 225 Ct.Cl. 104, 634 F.2d 521, 525 (1980). The principle underlying this rule is that when a government official engages in *ultra vires* conduct, the official "will not, in any legal or constitutional sense, represent the United States, and what he does or omits to do, without the authority of Congress, cannot create a claim against the Government 'founded upon the Constitution.' " *Hooe v. United States,* 218 U.S. 322, 335, 31 S.Ct. 85, 54 L.Ed. 1055 (1910).
>
> *Del-Rio Drilling Programs, Inc. v. U.S.* 146 F.3d 1358, 1362 (C.A.Fed.,1998)

The government officers here are alleged to have been acting within "the general scope of their duties," that is, they generally have the authority to grant and revoke permits.[1] There is no suggestion that they are acting *ultra vires*. Clearly, the government has eminent domain authority to take the rights which the 1913 Act granted to plaintiffs. And, by a combination of revoking the existing permit, and having a moratorium on new ones, the government has effectively taken the rights to plaintiff to place wharf structures between the pierhead and bulkhead lines. In inverse condemnation, this Court uses a two prong test:

> In *Ridge Line,* the Federal Circuit discussed in detail the two-pronged test that must be utilized in distinguishing a taking from a tort in inverse condemnation cases. *Ridge Line* involved the government's construction of a postal service facility which allegedly caused an increase in storm water runoff and flooded Ridge Line's downstream

[1]It may be that plaintiff will need to drop, from this lawsuit, his claim in paragraph 6 of the complaint that the permit revocation arose from an illegal purpose, but plaintiff should be afforded that option.

> neighbors. Plaintiff argued that, as a result, its flowage easement had been taken by inverse condemnation. The Federal Circuit found that the Court of Federal Claims' decision below focused solely on whether the government's action constituted a permanent and exclusive occupation and failed to consider "whether the increased water runoff constituted a taking of a flowage easement by inverse condemnation." *Id.* at 1355. Quoting *Columbia Basin Orchard v. United States,* 132 Ct.Cl. 445, 132 F.Supp. 707, 709 (1955), the court in *Ridge Line* then identified the two-part inquiry necessary, in the first instance, to determine when an action constitutes a taking as opposed to a tort. "First, a property loss compensable as a taking only results when the government intends to invade a protected property interest *or* the asserted invasion is the 'direct, natural, or probable result of an authorized activity and not the incidental or consequential injury by the action.' " *Ridge Line, Inc.,* 346 F.3d at 1355 (emphasis added). "Second, the nature and magnitude of the government action must be considered." *Id.* at 1356. "Even where the effects of the government action are predictable, to constitute a taking, an invasion must appropriate a benefit to the government at the expense of the property owner, or at least preempt the owner[']s right to enjoy his property for an extended period of time, rather than merely inflict an injury that reduces its value." *Id.* ( *citing Southern Pac. Co. v. United States,* 58 Ct.Cl. 428, 1923 WL 2123 (1923), *aff'd,* 266 U.S. 586, 45 S.Ct. 124, 69 L.Ed. 454 (1924)). If these factors are not sufficiently met, and the resultant damage is merely an incidental or consequential injury stemming from the government's action, then the action constitutes a tort over which this court has no jurisdiction. *Ridge Line,* 346 F.3d at 1356.

*Moden v. U.S.,* 60 Fed.Cl. 275, 282 (Fed. Cl.,2004).

The first factor in Ridge Line requires an intentional invasion of a protected property interest, in this case the right granted in 1913 to place wharf structures between the pierhead and bulkhead lines. The revocation of the permit denies plaintiffs the right to have their existing structures in this location. The permit was revoked precisely to take away that right, and accordingly the first prong of the *Ridge Line* test is met.

Second, we must consider "the nature and magnitude" of the governmental action. Was there an appropriation of the right of the citizen to the government? The revocation of the permit terminated the right of the citizen to have structures in the area between the pierhead and the bulkhead lines, and thereby returned that space to the government for whatever use the government

chooses to make of it. The right of the citizen has been appropriated to the government, so that the second prong of the *Ridge Line* test has also been met.

**3. Plaintiffs Have Demonstrated that They Can State a Claim in an Amended Complaint and an Entitlement to Discovery.**

Plaintiffs recognize that in the discovery which has occurred to date, and in the tests and challenges provided by briefing and argument that their theory of the case has changed somewhat from their initial pleading. But since this is the first attack on that pleading, the normal course would allow plaintiffs an opportunity to amend.

The Court noted when this motion was originally filed, that some discovery would be appropriate before it was heard. We see, for example, in the government's brief filed on September 25, that reference for the first time was made to actions taken in 1925. It would be appropriate to discover what other acts the Army has taken which might affect the interests here in issue, and we would urge the Court to allow discovery to be completed on that point before making a final determination concerning the rights and interests of the parties in this case.

September 27, 2006

____________________
Laurence F. Padway
Attorney for plaintiffs