IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RITA MOHLEN and RICHARD SKRINDE, Plaintiffs, | ) | No. 05-1179L |
| v. | ) | Hon. Marian Blank Horn |
| UNITED STATES OF AMERICA, Defendant. | ) | |

**DEFENDANT'S BRIEF IN RESPONSE TO THE COURT'S QUESTION OF SEPTEMBER 26, 2006**

Defendant herein files this second supplemental brief per the Court's September 26, 2006 request that each party address the question of whether plaintiffs have alleged that defendant violated the 1913 War Department Grant.[1/]

**1. Whether Plaintiffs Have Alleged that Defendant Violated the 1913 War Department Grant**

The question as posed by the Court is whether plaintiffs have alleged that defendant violated the 1913 War Department Grant ("1913 Grant") when it revoked the approval it granted plaintiffs pursuant to the Nationwide Permit program. The short answer to the Court's question is that although plaintiffs did not so allege in their Complaint, their opposition memorandum or in the Affidavit of Richard Skrinde, in their latest brief plaintiffs have argued that the revocation

[1/] The grant provides: "The owners of property abutting the lands included in the right of way acquired by the United States for the Oakland Tidal Canal . . . are hereby authorized and permitted to occupy with open work non-permanent structures for wharf purposes, the portions of the strips of U.S. property fronting their respective properties and situated between pierhead and bulkhead lines approved June 20th, 1913, without special lease or charge of any kind, it being expressly understood that this permission is revocable at any time when this area may be acquired for purposes of navigation and shall not be construed as a relinquishment of the government title to the said right of way."

of the Nationwide Permit violated the 1913 Grant. Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss at 7 ("The government revoked the easement [i.e. the 1913 grant] by revoking the permit . . .").

A. The Validity of the 1913 Grant

In its Supplemental Brief of September 25, 2006 ("September 25 brief"), defendant claimed that on the basis of a 1929 policy change, the Corps considered the 1913 Grant to be technically ineffective. September 25 brief at 5. As evidence of the 1913 Grant's nullification defendant submitted Defendant's Exhibit 3, a letter from the War Department to the Division Engineer of the South Pacific Division, dated November 26, 1935. By telephone the Court inquired whether a document memorializing the 1929 policy change could be produced. Defendant regrets to inform the Court that no such document has been uncovered at the time of this submission.

The validity of the 1913 Grant is, however, still in doubt. In order to demonstrate this, however, a brief description of bulkhead lines and pierhead lines is necessary.

Prior to the institution of the Corps' modern permitting procedures, bulkhead lines and pierhead lines were used to allow general activity without permits in waters over which the Corps had jurisdiction. Part 209 Administrative Procedure, 33 Fed. Reg. 18670, 18685 (Dec. 18, 1968) (codified at 33 C.F.R. § 209.150), attached as Defendant's Exhibit 4. The bulkhead line was a limiting line up to which construction could take the form of "solid fill . . . ." Id. A pierhead line was a limiting line up to which "open pile work . . ." could be constructed. Id. Pierhead and bulkhead lines were also frequently referred to as "harbor lines." Harbor Lines, 35 Fed. Reg. 8280 (May 27, 1970), attached as Def's Exhibit 5. Up until 1970, and in the 1913 Grant, this was the manner in which the Corps regulated the use of its jurisdictional waterways;

it drew limiting lines between which certain construction was allowed without a permit.

On May 27, 1970, "all existing and future harbor lines . . . [were] declared to be guidelines for defining, with respect to the impacts on navigation interests alone, the offshore limits of [constructing] open pile structures (pierhead lines) or fills (bulkhead lines)." See Def's Ex. 5 at 209.150(b)(2). From that date forward, the prior policy of allowing certain construction between bulkhead and pierhead lines was abandoned in favor of a system wherein a permit under the River and Harbor Act, 33 U.S.C. § 403, was "required in each case for any work which [wa]s commenced shoreward of existing or future harbor lines . . . ." Id.

The Corps action on May 27, 1970 is highly relevant to plaintiffs' claim of an interest arising out of the 1913 Grant. That grant allowed plaintiffs to build structures, without permits, between the pierhead and bulkhead lines. However, as of May 27, 1970, the Corps eschewed its practice of management by harbor lines; effectively destroying the validity of the 1913 Grant. Because plaintiffs did not acquire the Marina Drive property until 1994, the structures they built were never covered by the 1913 Grant and a permit was required for any construction they placed in the Oakland Inner Harbor Tidal Canal (the "canal").

B. Even If Plaintiffs Can Assert An Interest in the License Granted by the 1913 Grant, They Have Far Exceeded The Scope of That License

Even had the 1913 Grant not been nullified by the Corps rulemaking of May 27, 1970, it is clear from the plain language of the grant that the plaintiffs at most acquired permission to enter upon the land of the United States for the purposes of building "open work non-permanent structures for wharf purposes . . ." Skrinde Affidavit, Ex. 2. A wharf is a "structure on the shores of navigable waters, to which a vessel can be brought for loading or unloading." BLACK'S LAW DICTIONARY 1626 (8th ed. 2004). It is indisputable, however, that plaintiffs exceeded this permission and build much more than non-permanent wharf type structures.

The pictures attached as Exhibit 17 to the Affidavit of Richard Skrinde make abundantly clear that plaintiffs, or their predecessors in interest, vastly exceeded the permission granted them under the 1913 Grant. The photographs numbered 0747 and 0748 in Exhibit 17 show a closed office space which has all the accouterments of a permanent structure. Skrinde Affidavit, Ex. 17. Obviously, an office is not useful for loading or unloading a vessel and plaintiffs cannot assert that it is useful for such a purpose. Therefore, even if the 1913 Grant is effective the structures pictured in photographs 0747 and 0748 were not covered under that grant.

The right hand side of the photo marked 0738 in Exhibit 17 shows what appears to be a permanent rooftop deck with absolutely no access to the water; i.e., it could not possibly be used for wharf purposes. Id. Accordingly, this structure also is not covered by the 1913 Grant.

Additionally, the unnumbered landscape photograph in Exhibit 17 shows a permanent deck with a hot tub located thereon. Id. Although this structure grants access to the floating dock in the foreground, a wharf, it is a permanent structure, not a "non-permanent structure;" it exceeds the limits of the 1913 Grant and it is not covered by the permission given under that grant.

Finally, the boathoist, located in the upper center of the landscape photograph in Exhibit 17, is clearly more than a non-permanent structure and is not "open work" so it too was not covered by the 1913 Grant.

The only structure that would even have a chance to qualify as being within the ambit of the 1913 Grant is the floating dock located in the middle of the landscape photograph in Exhibit 17. Even though this structure meets the definition of an open, non-permanent wharf, this structure itself violates the terms of the 1913 Grant because it extends beyond the pierhead line. Compl., Ex. 3. Because it extends beyond the pierhead line this structure also falls outside the

1913 Grant's coverage.

None of plaintiffs' structures are properly viewed as being covered by the 1913 Grant. Accordingly, even if they had an interest in that grant, they exceeded the bounds of the permission granted them and cannot now claim protection under the 1913 Grant.

C. The Nationwide Permit Was Revoked, In Part, For Navigational Purposes

The 1913 Grant was always revocable should the United States need the licensed area for navigational purposes. Skrinde Affidavit at Ex. 2. One of the given reasons for revocation of the Nationwide Permit was the fact that plaintiffs' dock extended much further into the canal than virtually every other dock on the Alameda side of the canal. Compl., Ex. 3. Another of the reasons given for the revocation was that plaintiffs proposed dock would have impeded access to a neighbor's dock. Id. This led the Corps to conclude that the "interest of ensuring navigation safety. . . weighed against . . . [plaintiffs'] plan." Id. Protecting the navigable capacity and safety of the canal is a navigational purpose. See, e.g., Palm Beach Isles Assoc. v. United States, 208 F.3d 1374, 1382-84 (Fed. Cir. 2003). Accordingly, even if there was a conflict between the Nationwide Permit and 1913 Grant, the 1913 Grant was not violated because the revocation of the permit was undertaken in part for "navigational purposes."

D. Long Established Supreme Court Precedent Prevents Plaintiffs From Claiming an That the 1913 Grant Gave Rise to an Easement

Even if the 1913 Grant remained valid when plaintiffs acquired the property, even if plaintiffs structures complied with the terms of that grant and even if the United States had not asserted a navigational purpose in revoking the Nationwide Permit, plaintiffs' 1913 Grant theory of recovery is contrary to well-established Supreme Court precedent. Plaintiffs repeatedly assert that the 1913 Grant conveyed to them an easement. Pltfs' Supp. Brief at 5-7. Long standing precedent provides that when the federal government conveys an interest in land, it is held only

to have given that which it expressly granted. See, e.g., United States v. Union Pacific, 353 U.S. 112, 116 (1957); Caldwell v. United States, 250 US 14, 20-21 (1919). Accordingly, if plaintiffs acquired interest in the 1913 Grant, they acquired only what the grant gave on its face.

## CONCLUSION

Defendant submits the foregoing and hopes that the information will assist the Court in this matter.

Dated: September 27, 2006.

Respectfully submitted,
SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division

s/ Mark T. Romley

Mark T. Romley
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0458
Fax: (202) 305-0274