of navigation has come to the attention of the Division Engineer.

CROSS REFERENCE: For regulations of the Federal Power Commission, see 18 CFR Chapter I.

§ 209.150 **Harbor lines.**

(a) *The harbor line system.* (1) Section 11 of the River and Harbor Act approved March 3, 1899 (33 U.S.C. 404) authorizes the Secretary of the Army to cause harbor lines to be established where it is made manifest to him that establishment is essential for the preservation and protection of a harbor, and provides that compensation may be required where the extension of structures beyond established harbor lines is permitted.

(2) If only a single type of construction is permissible, a single limiting line will be defined. It will be designated a pierhead line if the type of construction is to be open-pile work and a bulkhead line if the construction is to be solid fill. If either open or solid construction is permissible, the limiting line will be designated a pierhead and bulkhead line. If solid construction is permissible adjacent to the shore, and open-pile work may be extended farther toward the channel, both bulkhead and pierhead lines will be established.

(3) Applications for the shifting of harbor lines channelward will receive very careful consideration before approval will be granted. The movement of bulkhead lines channelward allows the creation of additional land which may be valuable for terminal or other uses, but it diminishes the tidal prism and reduces the length of piers unless the pierhead line is moved correspondingly. The movement of pierhead lines channelward in important harbors frequently sought as a means for accommodating longer ships leads to greater congestion of shipping, increased velocity of current and more serious danger of accident. Accommodations for longer ships can generally be provided by a change of landing place to a wider section of the harbor, the construction of piers oblique to the short line, or an extension landward of the slips between piers.

(4) The selection of the system will require consideration of the following questions:

(i) Whether open-pile construction or solid fill or both, or a combination of both will be permissible.

(ii) Whether the channel faces of wharves, bulkheads, and similar structures at the locality should be vertical or inclined.

(5) Experience has shown that the establishment of a bulkhead line has been frequently followed by solid filling to the limit and by requests thereafter from riparian owners to push the limit farther toward the channel. It has also been found in some cases where the pierhead line is about a ship's length channelward of the bulkhead line that deep-draft vessels lying in the slips cut off much of the water flow causing silt deposits under the piers and in the slips thus considerably reducing the benefits expected under the plan of establishing separate limits for solid and open work.

(6) Each case must be considered on its merits and the probable commercial developments at the particular locality studied carefully. If they cannot be clearly foreseen, it may be advisable to make use of some experimental features with the view of adopting a fixed plan where experience indicated more conclusively what it should be. For example, it may be specified on the harbor line map that no structure will be placed between the pierhead and bulkhead lines until the special permission of the Secretary of the Army has been obtained; or that applications for solid construction between the bulkhead and pierhead lines will be considered; or that if slips are required in the future they will be provided by excavating shoreward of the bulkhead line. The fixing of the limits as permanently as possible is much preferred but proper concessions for shore developments and for the adequate protection at the same time of the interests of navigation without unreasonably reducing wharf frontage, may occasionally require some temporary expedient.

(7) If the channel faces of wharves and bulkheads at the locality are to be vertical and the channelward limits of extension from shore will therefore be vertical planes the establishment of a single harbor line to define the position of each plane will be sufficient. If the channel faces are to be inclined the position of the sloping limiting plane may be defined either by the establishment of two lines lying in the plane and at specified elevations (at high and low water), or by establishing a single line at a specified elevation and prescribing the degree of slope. When the channelward limiting plane is a slope the shoreward limit where vertical walls may be erected will be defined.

(8) Harbor lines will not be established across the mouths or entrances to navigable waterways. Care will be taken to see that the terminal points of the lines on either side of a waterway are selected with the view of a future extension of harbor lines along the tributary.

(9) When an extension or modification of a project has been recommended to Congress which will involve conflict with established harbor lines, the District Engineer will submit a report, with recommendation and map, as to abrogation or modification of the harbor line or lines affected.

(b) *Establishment of harbor lines.* (1) Harbor lines will be so established and marked that their exact position at any point can be determined with reasonable ease and accuracy. Reference monuments will be established at convenient intervals. Whenever possible convenient ranges on the lines will be established on shore.

(2) Reference monuments will be of permanent character so marked and described that they may be readily identified. They should be situated on the same side of the channel as the angle points referred to them and as close to them as practicable. Monuments of important Federal, State, or municipal surveys, boundary monuments, or lines of record, and intersections of center or side lines of streets where streets are well defined or can be located with reasonable accuracy will be used as reference monuments. Wherever practicable the harbor line system should be referenced to the plane coordinate system of the U.S. Coast and Geodetic Survey or Lake Survey if either system has been established, and connected with monuments of that Survey. Points on railroad tracks, wharves, or other structures likely to be shifted or changed in connection with work of reconstruction or repair will be used with caution. The bearing of reference lines should read from the reference point toward the harbor line point.

(3) All harbor lines will be straight lines unless exceptional circumstances require the use of curves. In such cases prior requests to the Chief of Engineers for authority to use curves will be made accompanied by a statement of necessity therefor.

(4) All traverses formed by sections of the lines and reference lines will close within reasonable limits.

(5) The descriptive data will be given in such form that a surveyor can readily locate any section of the lines or any reference line with as little additional computation or investigation as practicable.

(c) *Harbor line maps.* (1) Each harbor line map will be complete in itself, containing all description essential for the identification of monuments and reference points and for determining the position of the harbor lines on the ground. Where streets are well defined or where they can be located with reasonable accuracy, the distance to the harbor lines will be given from the intersections of center lines of streets measured along streets running toward the lines. The data will be inscribed adjacent to the lines and monuments to which it relates and in a manner convenient for reference.

(2) Where the harbor line system is referenced to the U.S. Coast and Geodetic Survey plane coordinate grid system, the coordinates of every harbor line point, monument and reference point will be given in tabular form on the map. Each map will have two meridian arrows, one showing the grid north and the other the true north, with appropriate notation as to the difference. Where the plane coordinate grid system is not used, the coordinates of every harbor line point, monument and reference point, based on true meridian, will likewise be given in tabular form on the map and a true meridian shown. Each section of the harbor line will be described by its length and appropriate azimuth of bearing.

(3) Hydrographic data and shore facilities will be shown in sufficient detail to present conditions clearly.

(4) The map will show whether the proposed lines are pierhead lines, bulkhead lines, combined pierhead and bulkhead lines, or otherwise, and will also



Defendant's Exhibit 4

bear all or such portion of the following statement as may be appropriate: "The bulkhead line defines the limit of solid filling; the pierhead line the limit to which open-pile structures may be built."

(5) Harbor line tracing will be brought up to date at sufficiently frequent intervals to protect properly the Federal investment in the harbor line systems. District and Division Engineers will take necessary measures to protect the property of the United States represented in field notes, monuments and maps relating to harbor lines in order that costly resurveys are not required. In the reestablishment of any monuments careful selection of the stations will be made to insure permanency.

(6) District Engineers will forward direct to the Director, U.S. Coast and Geodetic Survey, a copy of maps of new or modified lines. This will be done only when waters are involved that are charted by that agency.

(d) *Notification to municipal authorities.* Whenever an application is received for the establishment of harbor lines, or the modification of existing lines within the corporate limits of any city, town, or political subdivision by an applicant other than the municipal authority, the proper municipal authorities will be promptly notified in order that they may have full opportunity to be heard in case the contemplated harbor lines may interfere with any plans or works which the city, town, or political subdivision has planned.

(e) *Public notice, public hearing, and consultation with interested parties.* (1) Public notices of an application for establishment of harbor lines or for modification thereof are mandatory and will be issued to all known interested parties in every case.

(2) Public hearings in connection with harbor lines will be kept to a minimum and will be the exception rather than the rule. A hearing will be held at the discretion of the District Engineer only if he deems a public hearing essential, as in a known controversial case or when response from the public notice indicates that a public hearing should be held.

(f) *Report on harbor lines.* Whenever the establishment of new harbor lines or the modification of existing harbor lines is considered necessary, the District Engineer will submit a detailed report through the Division Engineer to the Chief of Engineers. The report will give the latest information on commerce (tonnage and type of shipments) and an analysis of prospective commerce and the general type and length of vessels and barges mooring at piers and bulkheads. The drafts of vessels and barges and the type of tows, whether single or flotilla, should be discussed along with all other matters that should be considered by the Department.

(g) *Modification of harbor lines.* When modification of an established harbor line becomes necessary the procedure will be as prescribed for the establishment of original lines. The report of the District Engineer on such modification will be accompanied by a copy of the approved map, showing clearly the original lines to remain in force, the portion to be superseded, the new lines proposed, and a draft of legend. In no instance will the approved lines be removed from the original harbor line tracing by erasure. If it is not practicable to revise the approved map, the District Engineer will furnish a new map prepared in accordance with the instructions found in paragraph (c) of this section but omitting all lines superseded. The approval of the Chief of Engineers will be obtained before new maps are prepared or approved maps are modified.

(h) *Terms used in connection with harbor lines.* To avoid ambiguity and misunderstanding both by the public and in the Department the expressions "shoreward (or landward) of harbor lines" and "channelward (or riverward) of harbor lines" will be used in official correspondence to describe position relative to harbor lines and such terms as "inside" and "outside," which might be given opposite meanings, shall be avoided.

(i) *Duty of District Engineers with respect to established harbor lines.* (1) The establishment of a harbor line implies consent to riparian owners to erect structures to the line without special authorization by the Secretary of the Army but does not imply consent to operations of every kind landward of the line. Such work as dredging for instance may seriously interfere with the regimen of the waterway and will ordinarily require the authorization of the Department to insure that operations are conducted under proper restrictions.

(2) District Engineers will keep informed therefore of operations landward of harbor lines sufficiently to assure themselves that all work proposed or in process is either of the character authorized by the establishment of the line or has been properly authorized. Where proposed structures are to touch or closely approach the harbor line the builder should be called upon to submit to the District Engineer in advance, plans of that portion of the proposed work which will be adjacent to the harbor line in order that the integrity of the line may be carefully maintained. Every structure touching the harbor line or closely approaching it will be inspected on completion and its location will be recorded on an office copy of the harbor line map or note made on the map showing where such data may be found.

**§ 209.155 Expenditure of Federal funds for work shoreward of harbor lines.**

(a) Section 5 of the River and Harbor Act of July 13, 1892 (27 Stat. 111; 33 U.S.C. 628), prohibits the expenditure of money appropriated for the improvement of rivers and harbors for dredging inside of harbor lines duly established.

(b) It is not the policy of the Department to expend Federal funds for the removal of wrecks or other obstructions shoreward of established harbor lines.

**§ 209.160 The California Debris Commission.**

Section 1 of the Act of Congress of March 1, 1893 (27 Stat. 507; 33 U.S.C. 661), created the California Debris Commission, consisting of three officers of the Corps of Engineers, to regulate under the supervision of the Chief of Engineers and direction of the Secretary of the Army, hydraulic mining in the territory drained by the Sacramento and San Joaquin River systems, California. Under section 9 of the act (27 Stat. 508; 33 U.S.C. 669), the individual proprietor or proprietors, or in case of a corporation, its manager or agent appointed for that purpose, owning mining ground in this territory which it is desired to work by the hydraulic process, must file with the Commission a verified petition, setting forth such facts as will comply with law and the rules prescribed by the Commission. The law contains detailed instructions with regard to facts required to be shown by the petitioner and the procedure to be followed by the Commission in issuing an order directing the methods and specifying the manner in which operations shall proceed. Full information on law and procedure can be obtained from the Secretary, California Debris Commission, 650 Capitol Mall, Sacramento, California 95814.

**§ 209.170 Violations of laws protecting navigable waters.**

(a) *Illegal structures or other work.* (1) Section 9 of the River and Harbor Act of March 3, 1899 (30 Stat. 1151; 33 U.S.C. 401), makes it unlawful to construct any bridge, dam, dike, or causeway over or in any navigable water of the United States until the proper local authority has been obtained and until the location and plans have been approved by the Chief of Engineers and the Secretary of the Army. When plans for any structure have been so approved, it is unlawful to deviate from such plans unless the modification thereof has received the approval of the Chief of Engineers and the Secretary of the Army. Plans of any bridge or causeway now require the approval of the Department of Transportation pursuant to section 6(g) (6) (C) of the Department of Transportation Act (80 Stat. 931).

(2) Section 10 of the River and Harbor Act of March 3, 1899 (30 Stat. 1151; 33 U.S.C. 403), prohibits the creation of any obstruction not affirmatively authorized by Congress to the navigable capacity of any of the waters of the United States, and makes it unlawful to build any wharf, pier, dolphin, boom weir, breakwater, bulkhead, jetty, or other structures, outside established harbor lines or where no harbor lines have been established, or to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army. The authority of the Secretary of the Army to prevent obstructions to navigation was extended to artificial islands and structures on the Outer Continental Shelf (section 4(f) of the Outer Continental Shelf Lands Act approved Aug. 7, 1953 (67 Stat. 463; 43 U.S.C. 1333(f)),