$$\text{Milligrams of clindamycin per capsule} = \frac{R_u \times W_s \times f \times W_a}{R_s \times W_u},$$

where:

$$R_u = \frac{\text{Area of the clindamycin sample peak (at a retention time equal to that observed for the clindamycin standard)}}{\text{Area of internal standard peak}};$$

$$R_s = \frac{\text{Area of the clindamycin standard peak}}{\text{Area of internal standard peak}};$$

$W_s$ = Weight of clindamycin working standard in milligrams;
$W_u$ = Sample weight in milligrams;
$f$ = Potency of clindamycin working standard in milligrams of clindamycin per milligram;
$W_a$ = Average capsule fill weight in milligrams.

(2) *Moisture.* Proceed as directed in § 141.502 of this chapter.

Data supplied by the manufacturer concerning the subject antibiotic drugs have been evaluated. Since the conditions prerequisite to providing for certification of these drugs have been complied with and since it is in the public interest not to delay in so providing, notice and public procedure and delayed effective date are not prerequisites to this promulgation.

*Effective date.* This order shall be effective upon publication in the FEDERAL REGISTER.

(Sec. 507, 59 Stat. 463, as amended; 21 U.S.C. 357)

Dated: May 15, 1970.

SAM D. FINE,
*Associate Commissioner for Compliance.*

[F.R. Doc. 70-6510; Filed, May 26, 1970; 8:45 a.m.]

# Title 33—NAVIGATION AND NAVIGABLE WATERS

## Chapter I—Coast Guard, Department of Transportation

SUBCHAPTER A—GENERAL

[CGFR 69-115]

## PART 1—GENERAL PROVISIONS

### Subpart 1.05—Rule Making

REDELEGATION OF AUTHORITY

It is the policy of the Department of Transportation to provide for the decentralization of authority to the maximum extent compatible with effective direction and control. In consonance with this policy, the Commandant has redelegated to the Chief, Office of Operations, U.S. Coast Guard Headquarters the authority to issue regulations pertaining to (1) the establishment and disestablishment of anchorage grounds and special anchorage areas, (2) changes to the anchorage regulations, and (3) affirmance of the actions of District Commander concerning security zones. This document by revision of §§ 1.05-1 and 1.05-30 reflects the transfer of the Coast Guard from the Treasury Department to the Department of Transportation and this redelegation by the Commandant to Chief, Office of Operations.

Since the revised sections deal with agency organization and management, they are excepted from the public rulemaking procedures and the effective date requirement of the Administrative Procedure Act.

1. Section 1.05-1 is revised to read as follows:

**§ 1.05-1 General.**

(a) The Secretary of Transportation is empowered by various statutes to issue regulations regarding the functions, powers and duties of the Coast Guard.

(b) The Secretary of Transportation by 49 CFR 1.45 and 1.46 has delegated to the Commandant, U.S. Coast Guard, the authority to issue regulations regarding the functions, powers and duties of the Coast Guard together with the authority to redelegate and authorize successive redelegations of that authority within the Coast Guard.

(c) The Commandant redelegates to the Chief, Office of Operations, U.S. Coast Guard Headquarters with the reservation that this authority shall not be further redelegated the authority to issue rules and regulations pertaining to the following:

(1) The establishment and disestablishment of anchorage grounds and special anchorage areas.

(2) Changes to the anchorage regulations.

(3) The affirmance of the actions of the Coast Guard District Commanders concerning security zones.

2. Section 1.05-30 is revised to read as follows:

**§ 1.05-30 Final action.**

(a) After the hearing or after the final date when comments may be submitted in accordance with the notice of proposed rulemaking, the Merchant Marine Council or the official designated in the notice shall consider all the data, views or arguments submitted and shall forward to the appropriate officer recommendations regarding the proposed regulations.

(b) Final action on the proposed regulation will be determined and the regulation will be issued by the Commandant, U.S. Coast Guard, or by the Chief, Office of Operations, U.S. Coast Guard Headquarters within the limits of the authority redelegated to him by § 1.05-1(c).

(c) Amendments to the regulations or new regulations will be published in the FEDERAL REGISTER. The effective date will be not less than 30 days after the date of publication except when otherwise provided by the Administrative Procedure Act.

(Sec. 553, 80 Stat. 383, sec. 2, 63 Stat. 496, as amended, sec. 633, 63 Stat. 545, sec. 2, 23 Stat. 118, as amended, R.S. 4405, as amended, R.S. 4462, as amended, sec. 6, 80 Stat. 947; 5 U.S.C. 553, 14 U.S.C. 2, 633, 46 U.S.C. 2, 375, 416, 49 U.S.C. 1655; 49 CFR 1.4 (a) and (g))

*Effective date.* This amendment shall become effective upon publication in the FEDERAL REGISTER.

Dated: May 20, 1970.

W. J. SMITH,
*Admiral, U.S. Coast Guard, Commandant.*

[F.R. Doc. 70-6548; Filed, May 26, 1970; 8:49 a.m.]

SUBCHAPTER J—BRIDGES

[CGFR 70-28a]

## PART 117—DRAWBRIDGE OPERATION REGULATIONS

### Sabine River, Texas

1. The Livingston Shipbuilding Co. by letter dated November 24, 1969, requested the Commander, Eighth Coast Guard District to provide special operation regulations for its swing span pontoon bridge across Sabine River (Old Channel) behind Orange Harbor Island at Orange, Tex. A public notice dated December 18, 1969, setting forth the proposed revision of the regulations governing this drawbridge was issued by the Commander, Eighth Coast Guard District and was made available to all persons known to have an interest in this subject. The Commandant also published these proposals in the FEDERAL REGISTER of March 24, 1970 (35 F.R. 5012).

2. After consideration of all known factors in this case this proposal is accepted. Accordingly, 33 CFR 117.245(j) (25-a) is added and shall read as follows:

**§ 117.245 Navigable waters discharging into the Atlantic Ocean south of and including Chesapeake Bay and into the Gulf of Mexico, except the Mississippi River and its tributaries and outlets; bridges where constant attendance of drawtenders is not required.**

* * * * *

(j) * * *

(26-a) *Sabine River (Old Channel) behind Orange Harbor Island, Orange, Tex.* The draw shall be opened promptly on signal from 7 a.m. to 12 Midnight Monday through Friday, except holidays. At all other times, including legal holidays, 8-hours' advance notice is required.

* * * * *

(Sec. 5, 28 Stat. 362, as amended, sec. 6(g) (2), 80 Stat. 937; 33 U.S.C. 499, 49 U.S.C. 1655(g) (2); 49 CFR 1.46(c) (5) )



Defendant's Exhibit 5

*Effective date.* This revision shall become effective 30 days following the date of publication in the FEDERAL REGISTER.

Dated: May 20, 1970.

W. J. SMITH,
*Admiral, U.S. Coast Guard, Commandant.*

[F.R. Doc. 70-6549; Filed, May 26, 1970; 8:49 a.m.]

---

[CGFR 70-70]

## PART 117—DRAWBRIDGE OPERATION REGULATIONS

### Revocation of Regulations for Removed Bridges

1. The Commandant has been advised that the Washington Street bascule bridge across the Petaluma River at Petaluma, Calif., for which special operation regulations had been prescribed, has been removed and these regulations governing its operation are no longer required.

2. Accordingly, 33 CFR 117.712(g)(2) is revised to read as follows:

**§ 117.712 Tributaries of San Francisco Bay and San Pablo Bay, Calif.**

* * * * *

(g) * * *

(2) *City of Petaluma highway bridge at "D" Street.* At least 6-hours' advance notice required.

* * * * *

(Sec. 5, 28 Stat. 362, as amended, sec. 6(g)(2), 80 Stat. 937; 33 U.S.C. 499, 49 U.S.C. 1655(g)(2); 49 CFR 1.46(c)(5))

*Effective date.* This revision shall become effective 30 days following the date of publication in the FEDERAL REGISTER.

Dated: May 20, 1970.

W. J. SMITH,
*Admiral, U.S. Coast Guard, Commandant.*

[F.R. Doc. 70-6550; Filed, May 26, 1970; 8:49 a.m.]

---

## Chapter II—Corps of Engineers, Department of the Army

## PART 209—ADMINISTRATIVE PROCEDURE

### Harbor Lines

Pursuant to the provisions of sections 10 and 11 of the River and Harbor Act of March 3, 1899 (30 Stat. 1151; 33 U.S.C. 403, 404), § 209.150 is hereby amended in its entirety effective upon publication in the FEDERAL REGISTER as follows:

**§ 209.150 Harbor lines.**

(a) *Definition.* The term "harbor line(s)" is used here in its generic sense. It includes types of harbor lines frequently referred to by other names, including, for example, pierhead lines and bulkhead lines.

(b) *Policies, practices and procedures.* (1) Under previous policies, practices and procedures, riparian owners could erect open pile structures, or undertake solid fill construction shoreward of established harbor lines without obtaining a permit under 33 U.S.C. 403. This was a matter of great concern, particularly in cases involving long established harbor lines, since all factors affecting the public interest may not have been taken into account at the time the lines were established. Accordingly, under previous policies, practices and procedures there was the danger that work shoreward of existing harbor lines could be undertaken without appropriate consideration having been given to the impact which such work may have on the environment and without a judgment having been made as to whether or not the work was, on balance, in the public interest.

(2) In order to assure that the public interest will be considered and protected in all instances, all existing and future harbor lines are declared to be guidelines for defining, with respect to the impact on navigation interests alone, the offshore limits of open pile structures (pierhead lines) or fills (bulkhead lines). A permit under 33 U.S.C. 403 will be required in each case for any work which is commenced shoreward of existing or future harbor lines after the date of publication of this regulation in the FEDERAL REGISTER. Applications for permits for work in navigable waters shoreward of harbor lines shall be filed and processed in accordance with the provisions of applicable sections of this part. For work already completed or commenced in conformance with existing harbor line authority before that date, no permit is required.

(c) *Establishment or modification of harbor lines.* Applications for the establishment of new harbor lines or the modification of existing harbor lines will be processed in a manner similar to applications for permits for work in navigable waters. Public notices concerning any such application will be sent to all parties known or believed to be interested in the application and a copy of the notice will be posted in post offices or other public places in the area. Public notices, apart from providing information relative to any harbor line application, shall make it clear that harbor lines are guidelines for defining, with respect to the impact on navigation interests alone, the offshore limits of open pile structures or fills and that the establishment of a harbor line carries with it no presumption that individual applications for permits to undertake work shoreward of any harbor line will be granted. Public hearings will be held in connection with applications for the establishment or modification of harbor lines whenever there appears to be sufficient public interest to justify the holding of a public hearing or when responsible Federal, State or local authorities, including Members of the Congress, request that a hearing be held and it is likely that information will be presented at the hearing that will be of assistance in determining whether the harbor line should be established or modified. District Engineers will forward all recommendations concerning the establishment or modification of harbor lines through the appropriate Division Engineer to the Chief of Engineers, ENGCW-ON. No new harbor lines will be established and no existing harbor lines will be modified unless specifically authorized by the Chief of Engineers.

[Regs., ENGCW-ON] (Secs. 10 and 11, 30 Stat. 1151; 33 U.S.C. 403, 404)

For the Adjutant General.

RICHARD B. BELNAP,
*Special Advisor to TAG.*

[F.R. Doc. 70-6534; Filed, May 26, 1970; 8:48 a.m.]

# Title 47—TELECOMMUNICATION

## Chapter I—Federal Communications Commission

[FCC 70-533]

## PART 0—COMMISSION ORGANIZATION

### Requests for Inspection of Materials Not Routinely Available for Public Inspection

*Order.* 1. Section 0.461(e)(3) of the rules and regulations now provides for appeal to the Commission from the rulings of the presiding officer in a hearing proceeding involving the inspection of Commission records. We have determined to amend this section to provide for appeal to the Review Board rather than the Commission. It is desirable as a general matter that such appeals be handled by the Board, in the same manner as other appeals from rulings of the presiding officer, and it is our belief that the change will expedite their consideration.

2. Authority for the adoption of this amendment is contained in sections 4(i), 5(d), and 303(r) of the Communications Act of 1934, as amended, 47 U.S.C. 154(i), 155(d), and 303(r). Because the amendment relates to matters of practice and procedure and to internal Commission organization, the prior notice and effective date provisions of 5 U.S.C. 553 do not apply.

3. In view of the foregoing: *It is ordered,* Effective June 1, 1970, That § 0.461(e)(3) is revised as set forth below. Appeals now on hand will be acted on under the revised procedure.

(Secs. 4, 5, 303, 48 Stat., as amended, 1066, 1068, 1082; 47 U.S.C. 154, 155, 303)

Adopted: May 20, 1970.

Released: May 22, 1970.

FEDERAL COMMUNICATIONS COMMISSION,
[SEAL] BEN F. WAPLE,
*Secretary.*

In Part 0 of Chapter I of Title 47 of the Code of Federal Regulations, § 0.461(e)(3) is revised to read as follows:

**§ 0.461 Requests for inspection of materials not routinely available for public inspection.**

* * * * *